STATE, Respondent, vs. GENOVA, Appellant.

*February 12—March 9, 1943.*

*James D. Sammarco* of Milwaukee, for the appellant.

For the respondent there was a brief by the *Attorney General, Herbert J. Steffes,* district attorney of Milwaukee county,

*George A. Bowman,* deputy district attorney, and *Charles J. Kersten,* assistant district attorney, and oral argument by *Mr. William A. Platz,* assistant attorney general, *Mr. Kersten,* and *Mr. Nathan W. Heller* of Milwaukee.

FAIRCHILD, J.   Under the evidence there was a premeditated design to kill, making the crime murder in the first degree unless the accused was insane at the time.   There was no occasion, as matters developed, for giving the jury, even if it were so inclined, an opportunity to indulge in sympathetic compromise and fix the guilt as murder in the second degree or manslaughter in the third degree, and no occasion exists for granting a new trial for any errors assigned.   A killing to be murder in the second degree must be by an act imminently dangerous to others and evincing a depraved mind, regardless of human life, without any premeditated design to effect the death of the person killed; but when deliberation and premeditation and other characteristics necessary to murder in the first degree are established beyond a reasonable doubt, the insanity defense having failed, the conclusion that accused was guilty of murder in the first degree reached by the jury would seem to follow necessarily.

The purpose of the procedure in a criminal trial is to find, as exactly as is humanly possible, where intent is the important element, the exact degree of crime committed.   If the killing is shown to be malicious and nothing more but evincing a depraved mind regardless of human life, it would be less than murder in the first degree.   There are cases where the circumstances have been such that the determination of whether the act was from a premeditated design to kill his victim or was the result of an act imminently dangerous to others and evincing a depraved mind regardless of human life or whether the accused killed another in the heat of passion without a design to effect death by a dangerous weapon had to be left to the

jury. However, a case does not fall within that category when the accused acting free from insanity and according to credible, uncontradicted testimony with an intent to kill carried out his purpose because he was tired of living with his victim. A daughter who was a witness on the trial, in describing a quarrel she witnessed some time before the homicide, testified that her father told her mother that he was "going to get her out of the way . . . he was going to butcher her." Deliberation, both before and after the act is proven beyond a reasonable doubt. His conduct after killing his wife shows that the matter of consequences had been considered by him and that he preferred confinement in prison to living with her. A consideration of all the evidence leads to the conclusion that the defendant not only did not care about what might happen if he killed her but that on this day and at this time the killing was "perpetrated from premeditated design to effect the death of the person killed" and was murder in the first degree.

The trial court properly refused compliance with the request to submit to the jury the question of guilt of manslaughter in the third degree. The appellant's position on this point would be better taken perhaps had murder in the first degree been submitted alone. But here the jury considered and rejected a charge below murder in the first degree; murder in the second degree was submitted. In any view of the case the record will be searched in vain for facts requiring the submission of third-degree manslaughter. The statutory definition contains the words "heat of passion," but although defendant was angry, his feelings do not come within the scope of these words as defined in *Carlone v. State,* 150 Wis. 38, 136 N. W. 153; *Johnson v. State,* 129 Wis. 146, 108 N. W. 55; and *Ryan v. State,* 115 Wis. 488, 92 N. W. 271, there being a lack of sufficient provocation. There are also included there the words "without a design to effect death." Were we to place unusual weight upon the possibility of defendant's temper being responsible for previous outbursts and threats

against his wife, it could not modify his act into anything less than murder in the first degree on this day where the evidence so clearly shows an intent to kill. In addition to the testimony referred to in our discussion showing the verdict as rendered the proper one, there must be considered in determining the presence of premeditation the fact that after his wife had fallen downstairs—this would be while all this blackness and lack of consciousness was affecting his reason—he did up his wounded hand and without any investigation as to what he had done during this frenzy with apparent calmness presented himself to a policeman and said, "I have killed my wife." Why did he think he had? The idea must have come from the plan or intent, for as a matter of fact she was still alive when the police got to the house.

Here the defendant did the things he intended to do. He was unhappy. His married life was disturbed. He had absented himself from home for periods of time although he was enough concerned about the family so that he sent home considerable sums of money out of his earnings. He had returned and had been living at home for some time before the homicide and had assumed charge of the grocery business which the family were conducting. There were frequent quarrels. The son, finding his mother bruised from treatment by his father, moved with his fists clenched toward the father who picked up the long-blade knife used in the homicide and remarked, "Here's where you or I go to Waupun." A daughter intervened and this quarrel seems to have ended. On the day of the murder the defendant described the events as follows: "She was about six or seven feet from me when I went toward her with the knife. She just shrugged her shoulders and took the blow." After he stabbed his wife, he put on his coat and sought the policeman.

The defendant's state of mind and ability to understand what he was doing were studied and his rights under the plea of insanity as well as in all other particulars were so pro-

tected and his guilt so clearly appears that the error in the admission of the enlarged photographs and articles of clothing cannot be held to be prejudicial. The originals of some of these enlarged photographs were admitted without objection. Were there any doubt of the existence in defendant's mind, even though for a brief time, of an intent to kill, placing his act squarely within murder in the first degree, we would be impelled to hold that the inflaming nature of this decidedly unnecessary display of cumulative evidence of what had been not only admitted by the defendant but abundantly proven by other evidence constituted reversible error.

An ingenious defense and able presentation of all that could be of service to the defendant leaves outstanding in the record the ugly termination of an unhappy domestic life, a tragedy ending in murder in the first degree. The remarks of the district attorney, while neither approved nor held to be objectionable by the trial court, did bring the caution to the jurors not to "let anything like that or anything else inflame you." Fair discussion in the heat of a trial may be exceeded so as to require a new trial, but here again the certainty with which the act and purpose of defendant are established leaves no room for thinking that the course of conduct by the state's attorney in this particular was prejudicial to the extent of effectively affecting the decision of the jury. The design of having a trial a rational proceeding, as against a method where anything approaching the substitution of mob spirit for an analysis of the evidence, is not aided by appeals that can only result, if they have any influence at all, in arousing passion and prejudice. The aim of the prosecutor in a judicial inquiry should be to analyze the evidence and present facts with a reasonable interpretation to aid the jury in calmly and reasonably drawing just inferences and arriving at a just conclusion upon the main or controlling questions.

The learned trial judge, in addition to his observation at the time the particular remark of the district attorney was chal-

lenged, in concluding his charge to the jury said : "You will not be swayed by sympathy or prejudice or passion. You will be very careful and deliberate in weighing the evidence." There is nothing about a trial in court that is expected to be capable of turning a human being into a calculating machine, but the high purpose to help reach a sound and righteous judgment should be present throughout the trial. While finding no prejudicial error, we feel warranted in suggesting careful consideration of efforts to avoid the arousing of passion and prejudice where only sound judgment should prevail, and while not exactly similar in circumstances, we cite the case of *Viereck v. United States,* 318 U. S. 236, 63 Sup. Ct. 561, 87 L. Ed. 000, as worthy of attention by prosecuting attorneys.

*By the Court.*—Judgment affirmed.

FRITZ, J., dissents.