CITY OF WAUKESHA, Respondent, v. GODFREY, Appellant.

*No. 93.   Argued January 3, 1969.—Decided February 4, 1969.*
(Also reported in 164 N. W. 2d 314.)

402

For the appellant there was a brief and oral argument by *James G. Forester* of Milwaukee.

For the respondent there was a brief by *George E. Lawler,* city attorney, and *William C. Lawler,* assistant city attorney, and oral argument by *William C. Lawler.*

CONNOR T. HANSEN, J. Appellant presents three issues on this appeal:

(1) Whether the trial court committed prejudicial error in instructing the jury concerning an "other intoxicating substance"?

(2) Whether the trial court committed prejudicial error in permitting testimony on behalf of the prosecution concerning defendant's refusal to take intoxication tests, including a urine specimen, when there was no legal obligation to do so?

(3) Whether the trial court committed prejudicial error in permitting testimony on behalf of the prosecution concerning defendant's previous unfavorable experiences in taking intoxication tests?

On October 15, 1967, at approximately seven p. m., appellant was driving his automobile when it struck the

rear of another automobile that had stopped at a four-way stop sign at an intersection in the city of Waukesha. The struck car was extensively damaged and appellant's automobile rendered undrivable. After the impact, the struck automobile spun around two or three times and traveled 82 feet; appellant's automobile traveled 43 feet.

Upon investigation by the Waukesha police department, appellant was found to have a strong odor of alcohol on his breath. He appeared not to know where he was or what was going on around him. To the police officers, he appeared to be in a daze. He did not appear to understand what was being said to him. He had a very difficult time understanding instructions and had to be asked questions over and over again. His eyes were dazed and glassy. However, they did not appear to be bloodshot. He had a great deal of difficulty walking and standing and keeping his balance. The officers concluded that appellant was under the influence of intoxicants and arrested him.

The officer who drove appellant to the police department testified that appellant was constantly belching on the way. Two police officers who observed appellant's behavior testified that in their opinion appellant was under the influence of intoxicants.

Appellant is thirty-one years old, is six feet tall and weighs 195 pounds.

Appellant testified that he has a chronic arthritic condition called "Reiter's syndrome" which he has suffered from off and on for five years. Appellant's doctor testified that he prescribed one or two capsules of darvon 65 every three or four hours to relieve any pain. The doctor described darvon 65 as a codeine-like drug the strength of which is similar to one-fourth grain of codeine. There was no testimony as to how long appellant had been taking darvon 65, how the drug affected the appellant, or how the drug affects people in general.

On the day of his accident and arrest appellant arose at five a. m. and went to work in Waukesha. He testified

that the pain from the Reiter's syndrome was terrible that day and that he took a darvon 65 pill at 5:30 a. m. and a second pill about 11 a. m. He remained at work until 12 noon at which time he went to Milwaukee to attend a Packer football game with a friend, Mr. Springob.

After the game, with appellant driving, they went to a restaurant on the south side of Milwaukee. Appellant took his third and fourth darvon 65 pills at 4:30 p. m. at the restaurant. They remained at the restaurant for an hour. Appellant testified that at the restaurant he had a couple of sandwiches and "Three, maybe four glasses [of beer] at the most."

They left the restaurant about 5:30 p. m. to pick up Springob's wife who was attending a baptism. Springob's wife was not ready to leave so they stopped at a tavern. Both testified that they remained at the tavern fifteen minutes, and that appellant had one bottle of beer. Appellant took his fifth and sixth darvon 65 pills at 6:15 p. m.

The two parted company at 6:30 p. m., and Springob testified that at that time appellant did not speak in an abnormal way, nor was he confused or disoriented. Springob noticed nothing unusual about appellant's actions other than that he was quiet and that he complained of not feeling well.

Godfrey testified that he has no recollection of where he went after leaving Springob. He has a slight recollection of sitting in his car at an intersection. The next thing he recalls was being taken from the city jail to the county jail at about 4:30 in the morning.

(1) The trial judge instructed the jury: "You are instructed that the driver of a motor vehicle is under the influence of an intoxicant when his ability to operate a motor vehicle is appreciably or materially impaired because of his consumption of an alcoholic beverage or other intoxicating substance."

The appellant contends that it was prejudicial error to include the words "or other intoxicating substance," in the jury instructions. This contention is based upon the assertion that the jury interpreted the words "or other intoxicating substance" to include the medication the appellant was taking.

We can find nothing in the record to support such a position. There is no testimony in the record to indicate how the medication affected the appellant, or how the drug affects people in general.

It seems the thrust of the appellant's argument is that he should have been charged either with operating a motor vehicle while under the influence of a dangerous drug, or operating a vehicle while under the influence of an intoxicant and a dangerous drug. Appellant asserts that the jury became confused as to the effect to be given to the combination of the drug and the intoxicating beverage because the trial judge included the words "or other intoxicating substance" in the instructions.

We fail to see how these assertions could favorably affect the plight of the unfortunate defendant. A person who consumes an intoxicant along with medication, does so at his own peril.

The Wisconsin statute adopted by the city of Waukesha does not read: It is unlawful for a person to operate a motor vehicle while *exclusively* under the influence of an intoxicant. The legislature has not so phrased the statute and it would be an intolerable burden to require the prosecution to prove that an intoxicant was the sole cause of the defendant's conduct.

"If liquor shares its influence with another influence and is still the activating cause of the condition which the statute denounces it can be truthfully said that the driver was under the influence of liquor." *Commonwealth v. Rex* (1951), 168 Pa. Super. 628, 632, 82 Atl. 2d 315.

In *Madison v. Walker* (1965), 28 Wis. 2d 469, 137 N. W. 2d 410, the defendant sought acquittal on a similar charge, alleging his condition was induced by a drug. The judgment of the trial court was affirmed. Factually, in *Walker*, the defendant presented a stronger case than does Godfrey. In *Walker* there was testimony which is absent in this case, as to the effect of the drug and that the medication was a dangerous drug.[3]

The effect of a low tolerance to intoxicants due to a person's impaired health or physical condition was considered by this court in *Milwaukee v. Johnston* (1963), 21 Wis. 2d 411, 124 N. W. 2d 690. In *Johnston* we stated that a person is chargeable not with knowledge of an objective quantitative standard of drinking but is chargeable with the knowledge of his own limitations and capacity, and if he chooses to consume intoxicants and to thereafter operate a motor vehicle, he does so at his own risk.

The record reflects that during its deliberations the jury returned to inquire about the instruction given. The trial court responded by repeating the instructions. While the inclusion of the words "or other intoxicating substance" may not have significantly added to the instructions, we see nothing prejudicial to the cause of the defendant by their inclusion.

(2) During the course of the trial, testimony of a police officer to the effect that appellant refused to take any intoxication tests was admitted into evidence over objections of the defense. At the close of the trial, the trial court instructed the jury:

[3] The Waukesha ordinances also adopt by reference sec. 151.07 (1) (a), Stats. 1959, which provides: "'Dangerous drug' means any drug or drug-containing preparation which bears the statement 'Caution—federal law prohibits dispensing without prescription' . . . ." There is no testimony as to whether darvon 65 contained such a statement, but appellant's doctor testified that he *prescribed* the darvon 65.

"Testimony has been received to the effect that the defendant refused to furnish a sample of his urine for chemical analysis to determine the amount of alcohol in his blood. You should consider this evidence along with all other evidence in the case, giving it just such weight as you deem it entitled to receive."

The appellant argues that since he had no obligation or duty, statutory or otherwise, to submit to any intoxication tests, such a refusal should not be used against him and that the admission of such evidence was prejudicial error.

In *Barron v. Covey* (1955), 271 Wis. 10, 72 N. W. 2d 387, also an ordinance case, this court determined that admission of evidence of the defendant's refusal to furnish a sample of urine for a chemical test did not violate the defendant's constitutional privilege against self-incrimination.[4]

A second question concerning the admissibility of a defendant's refusal to take a chemical test was raised in *Barron* as well as in this case. The statute [5] as it existed at the time of *Barron,* granted the trial court discretion as to whether or not the results of the chemical test were admissible. The *Barron* court held that because the court had discretionary powers as to the admissibility of the results of the chemical test, it followed that the trial court had the same discretion with respect to admitting testimony as to defendant's refusal to take the test.

However, the statute cited in *Barron* has been superseded by sec. 885.235, Stats., which no longer vests any discretion with the trial court as to admissibility of chemical tests. Such evidence "is admissible" under sec. 885.235.

The fact that the statute was changed as relating to the admission of the results of a chemical test does not

---

[4] Art. I, sec. 8, Wisconsin Constitution.

[5] Sec. 85.13 (4), Stats. 1953.

afford a basis for overruling the constitutional question decided in *Barron.*

The sole rationale for the rule against comment on a failure to testify is that such a rule is a necessary protection for the exercise of the underlying privilege of remaining silent. A refusal to cooperate with law enforcement officers does not qualify for such protection. *People v. Sudduth* (1966), 55 Cal. Rptr. 393, 421 Pac. 2d 401.

We find no prejudicial error in the admission of such evidence.

(3) Prior to commencement of the trial, the court granted appellant's motion to exclude from evidence any reference by the plaintiff or its agents to any previous traffic violations, charges or convictions, or circumstances surrounding the arrest of the defendant other than the instant matter.

During the course of the trial, one of the police officers testified, over objection of the defendant, as follows:

"Mr. Godfrey stated he would not take any tests as he had been through these tests enough times before to know better."

The statement of the defendant arises precisely out of his activities which culminated with his arrest for a violation of the Waukesha city ordinance on October 15, 1967.

The appellant was asked to take a chemical test. It was his right to either submit to the test or to refuse to do so. He chose to refuse to do so. His response to such a request is admissible evidence. The fact that in responding he chose to make a statement about previous experiences cannot now be claimed to be prejudicial error. The probative value of this statement of the defendant was a matter for the jury to consider and it was so instructed.

*By the Court.*—Judgment affirmed.