STATE, Plaintiff-Respondent, v. DRAIZE, Defendant-Appellant.

Supreme Court

*No. 76–523–CR. Submitted on briefs January 9, 1979.—
Decided March 27, 1979.*
(Also reported in 276 N.W.2d 784.)

446

For the appellant the cause was submitted on the brief of *Robert J. Beaudry* of West Allis.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Maryann S. Calef,* assistant attorney general.

WILLIAM G. CALLOW, J.   This is an appeal from a circuit court order affirming a county court judgment of conviction for driving under the influence of an intoxicant, contrary to sec. 346.63(1)(a), Stats.  At issue is whether the trial court committed prejudicial error by (1) receiving in evidence a state trooper's testimony that the defendant told him he had taken a breathalyzer test before; and (2) allowing the prosecutor, in rebuttal argument, to ask the jurors to place themselves in the shoes of the arresting officer and to tell the defendant through their verdict that "[t]his is not the kind of activity you engage in."

On November 1, 1975, the defendant was arrested at about 6:30 p.m. while driving east on Interstate 94 near Delafield in Waukesha County. He was charged in a criminal complaint with driving under the influence of an intoxicant, contrary to sec. 346.63(1)(a), Stats., and the case was tried to a jury.

The arresting State Patrol trooper testified he clocked the defendant's speed at as much as 82 miles per hour and observed his car veer onto the shoulder of the road three times before the trooper stopped him. The trooper testified that as the defendant got out of the car he "almost stumbled into the median, but he grabbed the door" and that he smelled an alcoholic beverage on the defendant's breath.  The defendant successfully touched his nose with his eyes closed and head cocked back with one hand; with the other he hit his upper lip. He was unable to walk steadily along a straight line at the highway's edge.  When the trooper took the defendant into custody, he seemed to act jovially, as though his arrest was a joke. At the station the defend-

ant could not stand on one foot and did some sidestepping when asked to walk on a line, although his performance was better than it had been on the highway.

Trooper Thomas Osteen administered a breathalyzer test to the defendant. He testified that the defendant swayed while walking and standing and that his eyes were bloodshot. He noticed an odor of alcoholic beverage on the defendant's breath. The defendant stipulated to the admission in evidence of the results of the breathalyzer test showing a blood-alcohol level of more than .17 percent.[1] The following colloquy occurred between the prosecuting attorney and the trooper:

"*Q.* Would you indicate what the results of State's test number fifteen was?

"*A.* Test number fifteen is in the analysis phase and the results were a .17 plus blood-alcohol reading.

"*Q.* When you say .17 plus what does the plus signify?

"*A.* It was a little higher than the .17 reading. It was more to the .18.

---

[1] Sec. 885.235(1)(c), Stats., provides:

"**Chemical tests for intoxication.** (1) In any action or proceeding in which it is material to prove that a person was under the influence of an intoxicant when operating or driving a motor vehicle, or while handling a firearm, evidence of the amount of alcohol in such person's blood at the time in question as shown by chemical analysis of a sample of his breath, blood or urine is admissible on the issue of whether he was under the influence of an intoxicant if such sample was taken within 2 hours after the event to be proved. Such chemical analysis shall be given effect as follows without requiring any expert testimony as to its effect:

". . . .

"(c) The fact that the analysis shows that there was 0.1% or more by weight of alcohol in the person's blood is prima facie evidence that he was under the influence of an intoxicant, but shall not, without corroborating physical evidence thereof, be sufficient upon which to find the person guilty of being under the influence of intoxicants."

*See:* Laws of 1977, Chapter 193, Section 14.

"*Q.* Would you indicate whether or not the Defendant had any difficulty breathing into the machine?

"*A.* No, he didn't. None whatsoever.

"*Q.* Was there any conversation that you had with the Defendant to instruct him as to how to blow into the machine and its operation?

"*A.* Yes, we instruct the people how to blow into the machine. In this particular case Mr. Draize advised me that he had been through this once before, he knows all about it."

The defense objected and moved for a mistrial. During argument outside the presence of the jury, the defense moved alternatively to strike the answer and for an instruction to the jury to disregard it. The court denied the motions and Trooper Osteen's testimony continued. He described the defendant as happy, carefree and cooperative, acting as though the arrest were just a joke. He testified that at one point the defendant leaned over, motioned to him, and said, "Boy, am I drunk."

The defendant testified that at the time of his arrest he was driving to Milwaukee from Madison, where he had attended a University of Wisconsin football game. It was a hot afternoon. He had one beer before the game, drank nothing during the game, and afterwards went out for pizza and beer with his brother and a friend. The three split two pitchers of beer, which amounted to about seven, seven-ounce glasses each. The defendant admitted that he was speeding home to see an evening basketball game. He testified that he was absolutely not under the influence of an intoxicant and that he succeeded in touching his nose with both hands. He said that, in response to the trooper's request that he walk a straight line, he took one step along the side of the road and refused to continue because a truck came by. He recalled that he was not asked to walk on a line at the station but instead to hop on one leg, which he did. He testified that he did not sway or stagger.

On closing argument rebuttal, the prosecutor said:

"Now, I think that the best thing that we can ask of you, what you can ask of yourself is that you, to be fair. Above all you have to be fair to the defendant. Fair does not necessarily mean, Mr. Defendant, you can leave this courtroom, we find you not guilty. That is not always fair. Fair is the essential truth. What took place. Fair in this case I think is guilty. You're labeling the defendant's conduct for what it is. You've got to speak to him not only in terms of guilty or not guilty, but in terms of telling him, look, this is not the kind of driving you engage in. This is not the kind of activity you engage in—"

Defense counsel objected, characterizing these remarks as an appeal to the jury's prejudice by implying that the verdict would affect the ultimate disposition of the case. The court overruled the objection stating, "The reference made by Mr. Gempeler doesn't state what if any finding should be made. It's strictly argument again." The prosecutor then asked the jurors to place themselves in the position of the arresting officer. The court overruled defense counsel's immediate objection, stating that the jury could disregard the comments or consider them, as it pleased. As the rebuttal argument continued, the prosecutor again spoke of the jury putting itself in the officer's position. The court overruled two additional objections to this line of argument. It instructed the jury, among other things, that the closing arguments should be considered carefully insofar as they may be helpful, but that they were not to be considered as evidence.

The jury found the defendant guilty as charged. Ten days later the trial court heard and denied the defendant's motion for a new trial based on the receipt in evidence of the trooper's testimony that the defendant told him he had taken a breathalyzer test before and on the content of the prosecutor's rebuttal. The court rendered

judgment of conviction on the verdict and sentenced the defendant, staying the sentence pending appeal. On appeal the circuit court affirmed the judgment and stayed the sentence pending an appeal to this court.

The question presented are: (1) Was it prejudicial error to receive the testimony of the State Patrol trooper that the defendant told him he had taken a breathalyzer test before? (2) Was it prejudicial error to permit the prosecutor to tell the jurors to speak to the defendant through the verdict by "telling him, look, this is not the kind of driving you engage in"; and to tell the jurors, in considering the case, to place themselves in the viewing position of the arresting officer?

## I.

In refusing to declare a mistrial or grant the defendant's motion to strike, the trial court relied on *Waukesha v. Godfrey*, 41 Wis.2d 401, 164 N.W.2d 314 (1969). In *Godfrey* the defendant was convicted of driving while intoxicated in violation of a Waukesha ordinance which adopted by reference the substance of sec. 346.63, Stats., 1959. The trial court admitted over objection a police officer's testimony that the defendant said, " 'he would not take any tests as he had been through these tests enough times before to know better.' " This court affirmed the conviction, holding the statement admissible. The court said:

"The appellant was asked to take a chemical test. It was his right to either submit to the test or to refuse to do so. He chose to refuse to do so. His response to such a request is admissible evidence. The fact that in responding he chose to make a statement about previous experiences cannot now be claimed to be prejudicial error. The probative value of this statement of the defendant was a matter for the jury to consider and it was so instructed." *Id.* at 409.

The defendant seeks to distinguish the *Godfrey Case* on the basis that the defendant Godfrey refused to take an intoxication test; therefore the statement, as one of the circumstances surrounding the refusal, may properly be considered by the jury. *See:* Wis. J I—Criminal, Part I, 235. Under this reasoning a defendant's statement that he would not take the test because he had been through it before would be admissible where he refuses to take the test but not relevant where, as in this case, he takes the test. This distinction seems to be implicit in the court's statement in *Godfrey, supra* at 409: "He chose to refuse to [take the test]. His response to such a request is admissible evidence." Because the circumstances surrounding the refusal to take the test were appropriate considerations for the jury, the *Godfrey* court was not required to reach the question whether the statement was admissible as an exception to the general rule proscribing the introduction of evidence of prior misconduct. *See: Whitty v. State*, 34 Wis.2d 278, 149 N.W.2d 557 (1967).

In this case we are required to reach that question because the admissibility of the testimony at issue stands on no independent footing. The defendant's remark that he had been through a breathalyzer test before implies that he had another arrest for drunk driving. As such, the trooper's testimony concerning this statement must be scrutinized under the other-conduct rule, sec. 904.04 (2), Stats.:[2]

"(2) OTHER CRIMES, WRONGS, OR ACTS. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such

---

[2] The other-conduct rule is, of course, not limited to criminal convictions; indeed, it is not limited to criminal *acts. Simpson v. State*, 83 Wis.2d 494, 511, 266 N.W.2d 270 (1978).

as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

The transcript of the argument on the admissibility of the statement makes it clear that the issue was raised in the trial court: defense counsel, while not specifically citing sec. 904.04(2), argued that if the statement objected to were admissible, then so would be a prior conviction.

The admission of other-conduct evidence calls for a twofold analysis: (1) Does the evidence offered fall within one of the exceptions enumerated in sec. 904.04 (2), Stats.? (2) If so, is its probative value not substantially outweighed by the danger of unfair prejudice? *Hammen v. State*, 87 Wis.2d 791, 275 N.W.2d 709 (1979); *State v. Spraggin*, 77 Wis.2d 89, 100–01, 252 N.W.2d 94 (1977). The record does not demonstrate that the trial court considered these factors. Ordinarily this would require reversal; in this case, however, we can say with certainty that the disputed testimony could not have had more than a slight effect, if any, on the jury verdict. The testimony at issue was but one statement in the course of the entire proceedings. It in no way compels an inference that the defendant had actually been guilty of drunk driving previously. The defendant himself disparaged his driving conduct when he admitted that he was speeding at the time of his arrest. Any error in the receipt of the evidence was therefore harmless. *Compare: Spraggin, supra* at 103.

## II.

The defendant objects specifically to two aspects of the rebuttal: (1) the prosecutor's telling the jury to speak to the defendant through its verdict by "telling

him, look, this is not the kind of driving you engage in";
and (2) the prosecutor's asking the jury to assume the
viewing position of the arresting officer.

The judicially established guideposts for a prosecutor's
closing argument are basic. This court has said that
counsel in closing argument should be allowed "consider-
able latitude," with discretion to be given to the trial
court in determining the propriety of the argument.
*State v. Bergenthal*, 47 Wis.2d 668, 681, 178 N.W.2d 16
(1970); *O'Neil v. State*, 189 Wis. 259, 263, 207 N.W.
280 (1926). The prosecutor may "comment on the evi-
dence, detail the evidence, argue from it to a conclusion
and state that the evidence convinces him and should
convince the jurors." *Embry v. State*, 46 Wis.2d 151,
160, 174 N.W.2d 521 (1970). In *State v. Genova*, 242
Wis. 555, 561, 8 N.W.2d 260 (1943), the court said:

"The aim of the prosecutor in a judicial inquiry should
be to analyze the evidence and present facts with a rea-
sonable interpretation to aid the jury in calmly and rea-
sonably drawing just inferences and arriving at a just
conclusion upon the main or controlling questions."

The line between permissible and impermissible argument
is thus drawn where the prosecutor goes beyond reason-
ing from the evidence to a conclusion of guilt and instead
suggests that the jury arrive at a verdict by considering
factors other than the evidence. *See: State v. Cydzik*,
60 Wis.2d 683, 695, 211 N.W.2d 421 (1973).

The remark that the jury should speak to the defendant
"not only in terms of guilty or not guilty, but in terms
of telling him, look, this is not the kind of driving you
engage in" is but a rephrasing of the conclusion sought
to be established, namely, that the driving conduct of
the defendant which was the subject of testimony is suf-
ficient to justify a guilty verdict.

The defense challenges that portion of the argument in which the prosecutor asked the jurors to view the defendant's conduct from the eyes of the arresting officer. The prosecutor simply asks the jury to view and evaluate the evidence from the perspective of the trooper witnesses who described the incident rather than the perspective of anyone else. This is clearly within the bounds of appropriate argument and is clearly distinguished from the repudiated "golden rule" argument. The defendant argues that the following remarks constitute prejudicial error because the arresting trooper's desire, or lack of desire, to get the defendant on or off the road was not an issue:

"The officer in making these observations has that choice to make, whether he allows this man to continue on driving, whether he places him under arrest. The officer in this case I think made the proper decision. I think it's one that would have been consistent with any reasonable person operating within their duties to stop this man from the conduct that he was engaging in on the highways in the County of Waukesha. That I don't think is unreasonable at all. Like I say, you've got to be fair to the defendant, fair to everyone, and fair to the defendant in this case is that Mr. Draize, you're not to drive in this manner. And I ask you to find him guilty. Thank you."

We conclude this argument is appropriate comment on the credibility of the trooper's judgment of the observations which prompted him to arrest the defendant and not permit him to continue to drive.

The court's instructions immediately following the rebuttal did include a standard instruction that the jury should consider the arguments of counsel insofar as they may be useful but that the arguments were not to be considered as evidence. (*See:* Wis. J I—Criminal, Part I, 160.) Closing argument is the lawyer's oppor-

tunity to tell the trier of fact how the lawyer views the evidence and is usually spoken extemporaneously and with some emotion. Substantial latitude is given, and we will not throttle the advocate by unreasonable restrictions so long as the comments relate to the evidence. The standard jury instruction places the closing argument in proper perspective. We conclude the prosecuting attorney did not exceed the bounds of proper argument.

*By the Court.*—Order affirmed.

COFFEY, J. (*concurring*). I agree with the opinion of the court, but add these words because the record in this case shows that the arresting officer, with probable cause to believe that the defendant was drunk, required him to walk a straight line at the edge of a heavily traveled interstate highway. Drunk driving is a serious offense, and a problem of great concern in our society, but an individual whose faculties have been dulled by drinking should not be expected to run or even walk a gauntlet of high speed auto and truck traffic.

For safety reasons, our statutes prohibit pedestrians from using expressways or freeways, and require them to walk on the left side of other highways. Secs. 346.16 (2) and 346.28, Stats. A police officer who directs someone to violate these statutes in the dark, in order to give a sobriety test, is not only subjecting the person so directed to an unreasonable risk of harm. He is also subjecting himself, and possibly the municipality, to a lawsuit if harm occurs.

I suspect the arresting officer thought he was proceeding in a manner consistent with the authorization of sec. 343.305 (2) (a), Stats., to request a preliminary breath test at the scene prior to issuance of a citation. I do not so read the statute, and in fact believe it to be of little value in law enforcement. The request cannot

be made unless the officer has probable cause to believe that the driver is under the influence. of an intoxicant or a controlled substance. If the officer has probable cause to so believe, he ought to issue a citation and take the driver to a station house without delay, for the protection of other drivers on the road, as well as for that of the accused. The legislature should consider redrafting this statute so as to eliminate, as this case demonstrates, the dangerous option of requesting a roadside test, not only to the officer, but to the defendant as well.