STATE OF WISCONSIN, PLAINTIFF-RESPONDENT,
v.
GERALD D. SCHRANK, DEFENDANT-APPELLANT.
No. 03-2885-CR.
Court of Appeals of Wisconsin.
Opinion Filed: April 14, 2004.
¶1 NETTESHEIM, J.[1]
Gerald D. Schrank appeals from a judgment of conviction for operating a motor vehicle while intoxicated (OWI) contrary to WIS. STAT. § 346.63(1)(a), and operating with a prohibited alcohol concentration (PAC) or more, contrary to § 346.63(1)(b), both as a third offense. On appeal, Schrank contends that the real controversy was not fully tried. We reject the argument and affirm the judgment of conviction.

FACTS
¶2 Schrank was arrested and charged with OWI and PAC. His theory of defense at the jury trial was that a person named Ralph had operated the vehicle and that he was merely a passenger in the vehicle. Schrank stipulated that he was intoxicated at the time and that the chemical test produced a blood alcohol content of 0.17%. Thus, the sole issue at the trial was whether Schrank was operating the vehicle. Schrank's attorney conveyed this theory of defense to the jury in his opening statement.
¶3 The evidence at the jury trial established the following. On September 19, 2002, at approximately 10:00 p.m., Officer Doug J. Wilde of the Fredonia Police Department and Deputy Michael J. Rowe of the Ozaukee County Sheriff's Department were separately responding to a report of a vehicle driving without headlights. While enroute they passed a pedestrian, later identified as Schrank, walking east along the highway. The two squad cars then passed the scene of a one-car accident and turned around to investigate. They found no keys in the vehicle, no one in the car, nor any persons in the immediate vicinity of the accident scene. After a brief investigation, Wilde left Rowe at the scene, and drove back east to question the pedestrian.
¶4 Wilde located Schrank about a quarter mile from the accident scene and about one mile from Schrank's residence. Under questioning, Schrank admitted that the accident vehicle was his, but he denied operating the vehicle. Instead, Schrank maintained that the individual driving the car was Ralph, a man Schrank knew from "Whatever's Inn," a bar that Schrank frequented in Newburg, Wisconsin. Schrank did not know Ralph's last name or his address, claimed that he had not had any contact with Ralph since the accident, but stated he had tried looking for Ralph by asking other people. Schrank said that he had picked up Ralph as he was walking on County Highway A after leaving Whatever's Inn. Later, Schrank told Rowe he picked up Ralph two blocks from the bar and offered him a ride and let Ralph drive. Schrank produced the keys to the vehicle during Rowe's questioning, but did not know how he got them. When Rowe asked if Schrank could explain the inconsistencies in the story, Schrank denied ever saying that he picked Ralph up on County Highway A.
¶5 Rowe testified as to the condition of the vehicle, which was depicted in photographs and published to the jury. This evidence established that the right front side of the vehicle was pushed in and that the front passenger seat appeared to have been moved. The driver's side of the vehicle was in much better condition. Based upon the severe damage to the passenger side, Rowe testified that any passenger in the vehicle would have been severely injured in the accident. Schrank complained to Rowe of chest pain following the accident, but declined medical treatment.
¶6 Wilde also testified, stating that Schrank had told him that he picked up Ralph approximately two blocks from the bar.
¶7 Schrank's testimony differed from the officers' testimony. Schrank stated that Ralph drove the vehicle from the bar and that Schrank was a passenger. Schrank also stated that he told Rowe during the questioning at the scene that Rowe was not correctly repeating what Schrank had already told him, that Rowe was twisting his words around, and that Rowe was not getting the story right. Schrank did not know whether he had crawled out, or was thrown out, of the vehicle. After the accident, he and Ralph passed within five feet of each other and, without exchanging words, the two walked off in opposite directions away from the accident scene. According to Rowe, Schrank admitted that he had the car keys in his pocket when Rowe confronted him, but he did not know how they got there. Schrank testified that he did not recall exchanging anything with Ralph following the accident.
¶8 In further support of his theory of defense, Schrank presented the testimony of David Gust who stated that he saw Schrank and another man get into Schrank's vehicle outside Whatever's Inn, that Schrank was not in the driver's seat, but he did not see them drive away. Gust also stated that he could not recognize the other individual, other than that he was a head taller than Schrank.
¶9 During closing arguments, the State told the jury that Schrank's defense was a story conjured up by Schrank to try to explain the accident without implicating himself. In his closing statement, Schrank's attorney told the jury that Schrank's injuries could have been caused by an impact with the dashboard of the car, that Rowe was not a crash expert, and that Rowe's testimony about the degree of injury a passenger would have received was speculation. Counsel also argued that just because Schrank could not provide Ralph's last name or address did not mean that the individual did not exist and that the officers had an obligation to look for this person. In its rebuttal statement, the State pressed the issue of Ralph, pointing out the inconsistencies and contradictions in Schrank's statements to the officers.
¶10 During its deliberation, the jury asked to see the photographs of the vehicle and the trial court granted the request over Schrank's objection. The jury found Schrank guilty, and he appeals from the ensuing judgment of conviction.

DISCUSSION
¶11 Schrank contends that the issue of whether he operated a vehicle while intoxicated was not fully tried pursuant to WIS. STAT. § 752.35. He argues that the State excessively focused on debunking Schrank's theory of defense that Ralph was operating the vehicle.[2] We conclude that Schrank's argument is a nonstarter and borders on the frivolous. It was Schrank who introduced the "Ralph" theory of defense. From that it follows that the State was entitled to take aim at this defense via both the evidence and in its arguments to the jury. As such, we could well stop our discussion at this point and summarily affirm Schrank's conviction. However, we choose to elaborate.
¶12 Under WIS. STAT. § 752.35, the court of appeals may reverse a judgment and remand for entry of a proper judgment or remit for a new trial where it appears from the record that: (1) the real controversy has not been fully tried, or (2) where it is probable that justice has for any reason miscarried. Vollmer v. Luety, 156 Wis. 2d 1, 19, 456 N.W.2d 797 (1990). A reversal under this statute is sometimes referred to as a reversal in the interests of justice. See State v. Hicks, 202 Wis. 2d 150, 158, 549 N.W.2d 435 (1996). An appellate court will exercise its discretion to grant a new trial in the interest of justice "only in exceptional cases." State v. Cuyler, 110 Wis. 2d 133, 141, 327 N.W.2d 662 (1983).
¶13 The case law has developed two categories of cases which warrant reversal under WIS. STAT. § 752.35. Vollmer, 156 Wis. 2d at 19.[3] The first category covers cases where the real controversy has not been tried; the second category covers cases where justice has miscarried. Id. In a "miscarriage of justice" case, before it can reverse, the reviewing court must find the substantial probability of a different result on retrial. Id. However, the court need not make this finding in a "real controversy not tried" case. Id. Here, Schrank invokes the first categoryreal controversy not fully tried. Therefore, he need not persuade us of a probability of a different result on retrial. Examples of cases where the real controversy was not fully tried include: (1) evidence erroneously excluded or admitted; (2) erroneous jury instructions or verdict questions; (3) significant legal issue not properly tried; (4) an incomplete or insufficient record; (5) conduct during the trial that prevented the jury from fairly considering a crucial issue; (6) the evidence confused the jury; and (7) the record demonstrates an abundance of misunderstanding, cross-purposes and frustration. Id. at 19-21.
¶14 In this case, Schrank stipulated that he was intoxicated and that he had a prohibited blood alcohol concentration of 0.17% at the time of the accident. He defended on the sole ground that Ralph had operated the vehicle. As a result, there was only one issue before the jurywho operated the vehicle? Understandably then, the State took sharp aim at this theory of defense by expending considerable time and effort to impeach Schrank's credibility both through its witnesses and its cross-examination of Schrank. We find nothing improper in this effort.
¶15 As to the closing arguments, we observe that a prosecutor is allowed considerable latitude. State v. Draize, 88 Wis. 2d 445, 454, 276 N.W.2d 784 (1979). "The prosecutor may `comment on the evidence, detail the evidence, argue from it to a conclusion and state that the evidence convinces him and should convince the jurors.'" Id. at 454 (quoting Embry v. State, 46 Wis. 2d 151, 160, 174 N.W.2d 521 (1970)). "The aim of the prosecutor in a judicial inquiry should be to analyze the evidence and present facts with a reasonable interpretation to aid the jury in calmly and reasonably drawing just inferences and arriving at a just conclusion upon the main or controlling questions." Draize, 88 Wis. 2d at 454 (quoting State v. Genova, 242 Wis. 555, 561, 8 N.W.2d 260 (1943)). "The line between permissible and impermissible argument is thus drawn where the prosecutor goes beyond reasoning from the evidence to a conclusion of guilt and instead suggests that the jury arrive at a verdict by considering factors other than the evidence." Draize, 88 Wis. 2d at 454.
¶16 Here, the sole and real controversy was whether Schrank or Ralph had operated the vehicle. Schrank aggressively asserted that Ralph was the operator and presented evidence in support. The State responded in kind, challenging the credibility of that defense and seriously impeaching that defense. The record in this case does not even remotely approach those situations in prior cases that prompted the need for a new trial in the interests of justice. Important evidence was not excluded or admitted. See Vollmer, 156 Wis. 2d at 19-20. The jury instructions and verdict questions were correct. See id. at 20. No important legal issue was overlooked or improperly tried. See id. The record is complete. See id. at 21. No conduct during the trial prevented the jury from fairly considering the issue. See id. The evidence, while in conflict, was not confusing. And, the record does not demonstrate any misunderstanding, cross-purposes or frustration. See id.
¶17 Therefore, this is not the "exceptional case" calling for relief under WIS. STAT. § 752.35. Cuyler, 110 Wis. 2d at 141.

CONCLUSION
¶18 A prosecutor is entitled to prosecute with earnestness and vigor and is entitled to strike hard blows, but not foul ones. Berger v. U.S., 295 U.S. 78, 88 (1935), overruled on other grounds by Stirone v. U.S., 361 U.S. 212 (1960); see also State v. Williams, 2002 WI 1, ¶43 n.38, 249 Wis. 2d 492, 637 N.W.2d 733. The State here struck earnest and hard blows but not foul ones. We hold that the real issue in controversy was fully and fairly tried. We affirm the judgment of conviction.
By the Court.Judgment affirmed.
NOTES
[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2001-02). All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[2] Schrank is compelled to look for relief under WIS. STAT. § 752.35 because he did not preserve his appellate issue in the trial court. See Vollmer v. Luety, 156 Wis. 2d 1, 11, 456 N.W.2d 797 (1990).
[3] In Vollmer, the supreme court was analyzing the case law under WIS. STAT. § 751.06, which grants the supreme court discretionary authority to order a reversal in the interests of justice. Vollmer, 156 Wis. 2d at 19. However, the court held that the supreme court's powers of discretionary reversal in § 751.06 were the same as that vested in the court of appeals under WIS. STAT. § 752.35. Vollmer, 156 Wis. 2d at 19.