COURT OF APPEALS
DECISION
DATED AND FILED

July 23, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP716-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF469

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

DAJUAN B. DESHAZER,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Manitowoc County: JERILYN M. DIETZ, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer, and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Dajuan B. Deshazer appeals from a judgment convicting him of first-degree intentional homicide, felon in possession of a firearm, and felony bail jumping.  He also appeals from an order of the circuit court denying his postconviction motion.  Deshazer argues that trial counsel was ineffective in four respects: (1) failure to object to the admission of a threatening text allegedly implicating Deshazer or present evidence that the text was fabricated; (2) failure to challenge identification testimony with the victim's statements to police that he could not identify Deshazer as the shooter; (3) failure to introduce evidence about the location of Deshazer's phone at the time of the shooting; and (4) failure to object to prosecutorial misconduct during closing arguments.  Deshazer also asserts that the cumulative effect of trial counsel's errors entitles him to a new trial.  We disagree and affirm.

## BACKGROUND

¶2     After a three-day jury trial, Deshazer was convicted of first-degree intentional homicide and other related charges stemming from a shooting that killed Robert Bauer in Manitowoc.  At the time of the shooting, Deshazer had a pending drug case in Manitowoc.  For about a year before the shooting, Bauer had been acting as a confidential informant for the metro drug unit with the Manitowoc Police Department.  Deshazer was one of the individuals, and the only African American man, on whom Bauer had informed.

¶3     About three months before the shooting, Bauer went to the police to report that Deshazer, who Bauer knew as "Tony," had threatened him.  Bauer told police that his friend, Samantha Cohen, showed him a screenshot of a text message reportedly threatening Bauer (the threat-text screenshot or screenshot). The message, introduced at trial as written, stated:

> I'm going to take car of him tomorrow n I need you to help me can't talk much over phone I'm going to have Jessica stop by at like 12 to fill u all the way in and I really need u your the closest thing to him that I have and it needs to be done ASAP I'm thinking his kid u no and I really need u I'm going to give u 1000 to for helping me I no u said he's your friend and yo don't want anything to do with it but I'm going to look out for wat ever you need frfr and keep $$ in your pocket if u do this and not no little $$ my BM stupid ass still here lease stay by your phone call u back in like 20 n sorry I had to hang up my BM or nobody can no what's going on ok

Cohen, who sent Bauer the screenshot, had obtained it from the phone of a person named Donte Walker. Bauer is not named in the text, and the State could not prove it originated from Deshazer's phone. Cohen reportedly later told police she had "used one of her pimp's cell phones to [compose] the text message and send it to her own personal cell phone." Neither Cohen nor Walker testified at trial.

¶4    Bauer's girlfriend, Tess,[1] witnessed the shooting and called 911. Although Tess did not see the shooter's face, she consistently told authorities that the shooter was a black man with thick, chest-length dreadlocks. While Tess was talking to the 911 dispatch operator, Tess asked Bauer who shot him. Bauer, whose condition was deteriorating rapidly, could not provide a name or identification of the shooter, but he was able to report that it "was someone he knew through working with" the metro drug unit or "the person from metro that he talked with." In the ambulance, a police officer asked Bauer if he saw who shot him. Bauer replied: "No." Bauer never identified Deshazer as the shooter by name.

---

[1]  We use a pseudonym to protect this victim/witness' right to privacy.

¶5     Three days after the shooting, a wig with long black dreadlocks was found in a ditch off a county road about five miles away from the crime scene. The dreadlocks on the wig were thick at the root and tapered down to thinner ends. Forensic testing of samples taken from the cap portion on the inside of the wig matched Deshazer's DNA.

¶6     Immediately after the shooting, police in Manitowoc and Milwaukee were alerted to find Deshazer or his vehicle, but he was not located in either place. Police later talked to Deshazer, who admitted that he went by the name "Tony." Deshazer also admitted both that he knew Bauer and that he knew Bauer was a witness in Deshazer's pending criminal case.

¶7     Deshazer turned over a cell phone to investigators. On that phone, a forensic investigator found a text message from four days before the shooting in which a person called "Booman" appeared to provide prices for various guns, including for a 9-millimeter firearm. Police had found three 9-millimeter shell casings at the scene of the shooting. All three casings had been fired from the same gun—likely a 9-millimeter firearm.

¶8     After Deshazer was convicted, the circuit court sentenced him to life imprisonment without eligibility for parole, as well as consecutive bifurcated sentences on the less serious counts. Deshazer filed a motion for postconviction relief in which he asserted the same four instances of ineffective assistance of counsel as he now raises on appeal.

¶9     As pertinent here, the postconviction court determined that trial counsel was not deficient because his challenged decisions and strategies were reasonable under the circumstances. The court further found counsel's strategic decisions consistent with the theory of defense; namely, that investigators had

mistakenly focused their efforts on Deshazer and stretched the evidence to tie him to the homicide, all while "ignor[ing] other potential areas for investigation." Deshazer appeals.

## DISCUSSION

¶10 Deshazer argues that his trial counsel provided constitutionally ineffective assistance in four respects. The Sixth Amendment of the United States Constitution guarantees a criminal defendant's right to effective assistance of counsel. U.S. CONST. amend. VI; *State v. Pico*, 2018 WI 66, ¶13, 382 Wis. 2d 273, 914 N.W.2d 95. The Wisconsin Constitution similarly provides the right to effective assistance of counsel. WIS. CONST. art. I, § 7; *see also State v. Sanchez*, 201 Wis. 2d 219, 226, 548 N.W.2d 69 (1996) (concluding that the right to counsel under the Wisconsin Constitution is "substantially similar" and "interpreted identically" to the Sixth Amendment right to counsel).

¶11 A defendant claiming ineffective assistance of counsel must establish that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "[T]here is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697; *see also State v. Breitzman*, 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93 ("If the defendant fails to satisfy either prong, we need not consider the other."). The defendant bears the burden on both prongs. *State v. Roberson*, 2006 WI 80, ¶24, 292 Wis. 2d 280, 717 N.W.2d 111.

¶12 We resolve this appeal based on the lack of a showing on the deficient performance prong. Our review of counsel's performance is highly deferential. *See State v. Jenkins*, 2014 WI 59, ¶36, 355 Wis. 2d 180, 848 N.W.2d

786. The defendant must show that the attorney's representation fell below an objective standard of reasonableness under all of the circumstances. ***Id.*** "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." ***Strickland***, 466 U.S. at 687.

¶13 We will attempt to reconstruct the circumstances under which defense counsel made his or her decisions when evaluating the reasonableness of counsel's conduct. ***Jenkins***, 355 Wis. 2d 180, ¶36. In assessing counsel's performance, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." ***Strickland***, 466 U.S. at 689. Counsel's decisions based on a reasonably sound strategy, without the benefit of hindsight, are "virtually unchallengeable" and do not constitute ineffective assistance. ***Id.*** at 690-91.

¶14 We review a claim of ineffective assistance of counsel as a mixed question of fact and law. ***State v. Manuel***, 2005 WI 75, ¶26, 281 Wis. 2d 554, 697 N.W.2d 811. "A circuit court's findings of fact will not be disturbed unless they are clearly erroneous." ***State v. Ward***, 2011 WI App 151, ¶9, 337 Wis. 2d 655, 807 N.W.2d 23. "Findings of fact include 'the circumstances of the case and the counsel's conduct and strategy.'" ***State v. Thiel***, 2003 WI 111, ¶21, 264 Wis. 2d 571, 665 N.W.2d 305 (citation omitted). The court's "legal conclusions as to whether the lawyer's performance was deficient and, if so, prejudicial, are questions of law that we review de novo." ***Ward***, 337 Wis. 2d 655, ¶9.

*Failure to object to admission and attack authenticity of threat-text screenshot*

¶15 Deshazer first argues trial counsel's ineffectiveness based on his treatment at trial of the threat-text screenshot. He claims counsel should have

objected to the admission of the screenshot at trial. However, at the postconviction hearing, trial counsel testified that although he had bases to object to admission of the screenshot, he did not object because he wanted it admitted at trial. The threat text, he explained, was so far removed from Deshazer that it was "ludicrous." Counsel believed its seeming significance to the police and their shaky attempts to link it to Deshazer bolstered the defense strategy of showing that the investigation was focused on mistakenly implicating Deshazer.

¶16 As we have observed, the postconviction court found that trial counsel's defense strategy was a reasonable one. When a circuit court determines that counsel had a reasonable trial strategy, the strategy "is virtually unassailable in an ineffective assistance of counsel analysis." *State v. Maloney*, 2004 WI App 141, ¶23, 275 Wis. 2d 557, 685 N.W.2d 620; *see also Strickland*, 466 U.S. at 690-91. Deshazer has presented no basis on which to overturn the court's findings that counsel's "virtually unassailable" use of trial strategy and the screenshot to Deshazer's benefit were reasonable. *See Maloney*, 275 Wis. 2d 557, ¶23; *see also Thiel*, 264 Wis. 2d 571, ¶20. Deshazer has not persuaded us that counsel performed deficiently in choosing this strategy.

¶17 Deshazer also argues trial counsel performed deficiently in failing to call Cohen as an impeachment witness to challenge the authenticity of the threat-text screenshot. "Evidence of impeachment is material if the witness whose testimony is attacked 'supplied the only evidence linking the defendant(s) to the crime,' or 'where the likely impact on the witness's credibility would have undermined a critical element of the prosecution's case.'" *State v. Rockette*, 2006 WI App 103, ¶41, 294 Wis. 2d 611, 718 N.W.2d 269 (citations omitted).

¶18    We reject Deshazer's arguments as to this alleged deficiency because the threat-text screenshot was not material to the case; the State did not rely exclusively on the screenshot to establish Deshazer's guilt at trial. Nor would further attacks on its credibility in terms of authenticity have undermined the State's case. Even if the screenshot had been excluded, the jury still would have learned that three months before the shooting, Bauer reported to police that he received a threat and that he believed Deshazer was planning a hit on him and his son. The dreadlock wig, ditched on a county road about five miles from the crime scene, had Deshazer's DNA on it. A phone of Deshazer's had a text message sent just days before the murder with pricing information for a 9-millimeter firearm. Thus, even without the screenshot, there was sufficient circumstantial evidence of Deshazer's guilt.

¶19    Moreover, it was well-established that Bauer had informed on Deshazer's illegal drug activity. It was well-established that Deshazer knew Bauer would be testifying against Deshazer in his pending drug case. The threat text was not the only evidence establishing motive for Deshazer to kill Bauer. *See Kelly v. State*, 75 Wis. 2d 303, 320 n.7, 249 N.W.2d 800 (1977) ("[M]otive may be shown as a circumstance to aid in establishing the guilt of a defendant."). Deshazer had been charged in Manitowoc based on Bauer's role as an informant not long before the shooting. In other words, there was other evidence of Deshazer's motive.

¶20    The circuit court instructed the jury to determine witness credibility using several factors, including his or her interest in the result of the trial and possible motives for falsifying testimony. *See* WIS JI—CRIMINAL 300 (2023). Counsel indicated at the postconviction hearing that there were major issues with Cohen's credibility such that anything she testified to would be of little value to Deshazer, and could harm the case, due to her unreliability as a truthful witness.

¶21 To summarize, Deshazer has failed to meet his burden of establishing deficient performance regarding trial counsel's handling of the threat-text screenshot at trial. It was a reasonable decision to want it admitted, and it was consistent with the defense strategy. Deshazer also has not persuaded us that counsel rendered ineffective assistance in failing to call Cohen. To have called Cohen would have put her credibility, and possibly the entire defense strategy, on the line.

*Failure to introduce evidence that victim said Deshazer was not the shooter*

¶22 We turn next to Deshazer's assertion that trial counsel rendered ineffective assistance in failing to use a statement in a police report indicating that Bauer, at one point during an interview, denied that Deshazer was the shooter. Deshazer argues trial counsel should have used this statement to impeach an officer who testified that Bauer never specifically excluded Deshazer as the shooter.

¶23 Deshazer's argument fails to acknowledge the postconviction court's finding, consistent with the record, that Bauer was never able to identify by name who shot him, though he consistently stated that Deshazer orchestrated the shooting. Counsel could not have admitted that portion of the recording "in a bubble" without opening the door to the entire recording. And as the court noted, in other parts of the recording, Bauer said that Deshazer was behind the shooting. The recording also included information reflecting that Deshazer operated a robust drug trade, such as sizable dollar figures, which would have undercut counsel's efforts to sanitize Deshazer's image for the jury.

¶24 Deshazer has failed to persuade us that the postconviction court's factual finding is erroneous. It had support in the record and was consistent with

the law. Bauer's interview reflects that while Bauer said he did not think Deshazer was the shooter, he consistently maintained that Deshazer orchestrated the shooting. Had counsel attempted to impeach the officer's testimony as Deshazer now suggests he should have, it likely would have done Deshazer more harm with the jury than counsel's chosen strategy of hammering on the fact that Bauer never identified the shooter. It was not deficient performance to intentionally avoid the questionable statement at trial rather than open the door to the other harmful evidence that would have accompanied the one good fact for Deshazer in the officer's reports.

¶25 As the postconviction court found, trial counsel's decision to not introduce Bauer's statement excluding Deshazer was a "strategic decision made in furtherance of the overall trial strategy that also at the same time kept a lot of ... damaging information out." In this context, counsel's decision is "virtually unassailable" and does not constitute deficient performance. *See Maloney*, 275 Wis. 2d 557, ¶23.

*Failure to introduce evidence that Deshazer's phone was connected to Wi-Fi in Milwaukee at time of shooting*

¶26 Deshazer next argues that trial counsel was ineffective for not introducing evidence that a cell phone belonging to Deshazer was connected to Wi-Fi in Milwaukee at the time of the shooting. At the postconviction hearing, counsel testified that he was aware that Deshazer had multiple cell phones at the time of the shooting. Counsel therefore concluded that introducing evidence that one phone was connected to Wi-Fi in Milwaukee would not have established a meaningful alibi. Instead, it would have opened the door to evidence that Deshazer had multiple cell phones, supporting an inference that Deshazer was a prolific drug dealer. Because counsel concluded that the information would have

done more harm than good to Deshazer's defense, the fact that a phone was in Milwaukee during the shooting was not introduced at trial. In addition, even without the Wi-Fi evidence, counsel indicated he was able to stress a similar, less risky point, arguing strenuously to the jury that police had no proof from cell phone GPS data placing Deshazer in Manitowoc at the time of the shooting.

¶27 As with trial counsel's decisions discussed above, the postconviction court determined that counsel's decision not to introduce the Wi-Fi evidence was reasonable. The court agreed that without introducing the phone, counsel "was able to preserve th[e] sanitized version of events that worked toward the theory of defense that he and ... Deshazer had agreed upon and presented. Again, this is a phone versus the only phone and that is an important distinction." As we concluded regarding counsel's other challenged decisions, because counsel's decision not to introduce the Wi-Fi evidence furthered the overall trial strategy while sanitizing Deshazer's image, it does not constitute deficient performance. *See **Id.**, ¶23.

*Failure to object during prosecutor's closing argument*

¶28 We now turn to Deshazer's argument that trial counsel provided ineffective assistance by failing to object to portions of the State's closing argument. Specifically, he takes issue with the prosecutor remarking that Bauer had named "Tony" as the person who sent the threat text and that Bauer had never excluded Deshazer as the shooter, and suggesting that police were not able to locate Deshazer in Milwaukee or Manitowoc the evening of the shooting.

¶29 Counsel is allowed considerable latitude in closing argument. *See **State v. Draize**, 88 Wis. 2d 445, 454, 276 N.W.2d 784 (1979). The prosecutor may comment on the evidence, detail the evidence, argue from it to a conclusion,

and state that the evidence convinces him or her and should convince the jurors. *See id.* "The line between permissible and impermissible argument is thus drawn where the prosecutor goes beyond reasoning from the evidence to a conclusion of guilt and instead suggests that the jury arrive at a verdict by considering factors other than the evidence." *Id.*

¶30 In all three challenged respects, the prosecutor was simply commenting on the evidence presented and proposing reasonable inferences to be drawn from them. There were no grounds for objection. Deshazer does not suggest, and the record does not reveal, that the prosecutor asked the jury to consider any factors aside from the evidence. *See id.*

¶31 We conclude that the prosecutor's comments were permissible characterizations of the evidence presented at trial. There was no question that Bauer had told police that he thought Deshazer was behind the threat text and had indicated, at least at one point, that Deshazer had orchestrated the shooting, and there was no question that the police did not locate Deshazer in Manitowoc or Milwaukee when looking for him the night of the shooting. The prosecutor's closing argument did not go beyond "reasoning from the evidence to a conclusion of guilt." *See id.* Trial counsel did not perform deficiently in this respect.

*Cumulative effect of errors*

¶32 Finally, we reject Deshazer's argument that the cumulative effect of trial counsel's errors entitles him to a new trial. *See **Thiel**,* 264 Wis. 2d 571, ¶60. As explained above, there was nothing objectively unreasonable about trial counsel's decisions and strategy. We previously concluded that trial counsel did not perform deficiently regarding the threat-text screenshot or by failing to object during the prosecutor's closing arguments. We further ascertained no deficiency

with regard to the failure to introduce specific evidence. We conclude that whether viewed separately or together, trial counsel's alleged errors do not undermine our confidence in the outcome of Deshazer's trial.

## CONCLUSION

¶33     Based on the foregoing reasons, all of the claims raised by Deshazer on appeal fail. Accordingly, we affirm the judgment of conviction and the order denying his postconviction motion.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5 (2023-24).