# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2011AP1467-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| |        Plaintiff-Respondent-Petitioner, |
| |    v. |
| | Donyil Leeiton Anderson, Sr., |
| |        Defendant-Appellant. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 350 Wis. 2d 505, 838 N.W.2d 136
(Ct. App. 2013 – Unpublished)

| | |
|---|---|
| OPINION FILED: | July 30, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | April 8, 2014 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Rock |
|   JUDGE: | James P. Daley |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | PROSSER, J., concurs. (Opinion filed.) |
|   DISSENTED: | ABRAHAMSON, C.J., BRADLEY, J., dissent. (Opinion filed.) |
|   NOT PARTICIPATING: | |

ATTORNEYS:

For the plaintiff-respondent-petitioner, the cause was argued by *Sally Wellman*, assistant attorney general, with whom on the briefs was *J.B. Van Hollen*, attorney general.

For the defendant-appellant, there was a brief by *William E. Schmaal*, assistant state public defender, and oral argument by *William E. Schmaal*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2011AP1467-CR
(L.C. No. 2008CF2428)

STATE OF WISCONSIN        :       IN SUPREME COURT

State of Wisconsin,

     Plaintiff-Respondent-Petitioner,

     v.

Donyil Leeiton Anderson, Sr.,

     Defendant-Appellant.

**FILED**

**JUL 30, 2014**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Reversed.*

¶1 MICHAEL J. GABLEMAN, J. This is a review of an unpublished decision of the court of appeals[1] reversing the judgment of the Rock County Circuit Court[2] convicting Donyil L. Anderson, Sr., of one count of first-degree intentional homicide and one count of attempted first-degree intentional homicide.

¶2 The question presented in this case is whether the circuit court erred in instructing the jury that "[a] temporary

---

[1] State v. Anderson, No. 2011AP1467-CR, unpublished slip op. (Wis. Ct. App. Aug. 15, 2013).

[2] The Honorable James P. Daley presided.

mental state which is brought into existence by the voluntary taking of drugs or alcohol does not constitute a mental defect." The State and Anderson both argue that this jury instruction was erroneous, but for different reasons. Anderson argues that the jury instruction was erroneous because it failed to distinguish between prescription medication and illegal drugs. As a result, the jury was prevented from considering whether his use of Strattera, a prescription medication used to treat Attention Deficit Disorder, supported an insanity defense. The State's position is that the jury instruction was erroneous because Anderson's defense was premised on his reaction to the mixture of alcohol and Strattera. Therefore, the instruction used the wrong conjunction by referring to "drugs or alcohol," rather than "drugs and alcohol." However, the State argues that any error was harmless because as a matter of law, an insanity defense cannot be premised on a mental state arising from the voluntary use of drugs and alcohol.

¶3 We conclude that the circuit court's instruction to the jury was an accurate statement of the law. This court has never determined that consumption of prescription medication can give rise to a mental defect that would sustain an insanity defense. We decline to craft a new affirmative defense that would incorporate elements of the involuntary intoxication and insanity defenses simply because Anderson cannot meet the requirements of the involuntary intoxication defense statute. Moreover, even if the circuit court had instructed the jury that the consumption of "drugs and alcohol" cannot create a mental

2

defect, Anderson would fare no better, because it is established law that one who mixes prescription medication with alcohol is responsible for any resulting mental state. Accordingly, we reverse the decision of the court of appeals.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

¶4 This case centers around an incident that arose in the early morning hours of August 9, 2008, when the defendant, Donyil L. Anderson, Sr. ("Anderson"), arrived at a residence he had previously shared with his then-girlfriend, Stacey Hosey ("Hosey"), with whom he had a one-year-old son. Upon arriving, Anderson saw the car of Hosey's new boyfriend, Branden Beavers-Jackson ("Beavers-Jackson"). Anderson removed the car stereo from his own car and used it to smash the windows of Beavers-Jackson's car. Anderson then proceeded to kick in the back door of Hosey's home and enter the residence. A neighbor witnessed Anderson's entry and called the police.

¶5 Upon entering the residence, Anderson stabbed Hosey multiple times with various kitchen knives.[3] Anderson also stabbed Beavers-Jackson five times in the abdomen and hip. Shortly thereafter, as Officer Richard LeFeber ("Officer

---

[3] The criminal complaint filed against Anderson specifies that he inflicted "13 individual stab wounds to Hosey's back, a large laceration across the front of Hosey's neck near her throat and voice box area which was approximately 4" to 5" wide, a puncture wound below Hosey's left breast, several laceration and possible puncture wound [sic] to Hosey's left arm, spanning from her shoulder area all the way down to her wrist, one laceration to Hosey's right forearm which was approximately four inches long and several lacerations on both Hosey's hands which appeared to be defensive wounds."

LeFeber") of the City of Beloit police department approached the scene, he saw Beavers-Jackson standing in his boxer shorts, covered in blood and waving frantically.  Officer LeFeber also found Hosey leaning against a nearby garage door, while Anderson lay motionless in Hosey's driveway.  Officer LeFeber called to Anderson, and Anderson stood up, held a four-inch kitchen knife above his head, and walked towards Officer LeFeber, asking to be killed.  Officer LeFeber ordered Anderson to drop the knife, but Anderson continued to approach, and Officer LeFeber subdued him with a Taser.

¶6  At the hospital, Anderson admitted to police that he had a few beers before the incident but stated he was not intoxicated.  Anderson also explained that he had been taking Strattera, a prescription medication used to treat Attention Deficit Disorder, for about two months, and it been making him "real edgy."[4]

¶7  Beavers-Jackson survived his injuries, but Hosey's wounds proved fatal.  Anderson was charged with one count of First-Degree Intentional Homicide and one count of Attempted First-Degree Intentional Homicide in violation of Wis. Stat. §§ 940.01(1)(a) and 939.32 (2007-08).[5]

---

[4] During the trial, a psychologist for Anderson's counseling center testified that Anderson was prescribed 80 milligrams of Strattera, to be taken once per day.

[5] All subsequent references to the Wisconsin Statutes are to the 2007-08 version unless otherwise indicated.

¶8 At trial, the State presented its case-in-chief, and Anderson then entered an <u>Alford</u> plea on both counts.[6] Anderson argued that he was not guilty by reason of insanity due to a mental disease or defect under Wis. Stat. § 971.15. During the insanity phase of the trial, Anderson called an expert witness, Dr. Hugh Johnston ("Dr. Johnston"). Dr. Johnston testified that he believed Anderson suffered a temporary mental defect at the time of the homicide that made him unable to control himself or conform his conduct to the requirements of the law. This condition, according to Dr. Johnston, was caused by a combination of four factors: (1) a lifelong impairment of the ability to exert self-control in emotionally provocative situations; (2) a major depressive disorder that was not appropriately treated; (3) the impact of Strattera on brain functioning; and (4) Anderson's ingestion of alcohol.[7] Dr. Johnston explained that, while all of these factors simultaneously played a role in Anderson's behavior, he believed if Anderson had not been taking Strattera, it was "highly

---

[6] "An <u>Alford</u> plea is a guilty plea in which the defendant pleads guilty while either maintaining his innocence or not admitting having committed the crime." <u>State v. Garcia</u>, 192 Wis. 2d 845, 856, 532 N.W.2d 111 (1995).

[7] Dr. Johnston's written report recited the results of a blood alcohol test taken by hospital staff following the homicide as 0.176. However, at trial, Dr. Johnston testified that Anderson's blood alcohol concentration was 0.0176. It appears Dr. Johnston misspoke during trial, given that a later blood sample of Anderson revealed a blood alcohol concentration of 0.150——well above the 0.08 legal limit for driving in Wisconsin.

unlikely that Ms. Hosey would have been killed." In Dr. Johnston's opinion, Anderson's use of Strattera played "a very important role" in the incident.

¶9 Dr. Johnston also described the half life of Strattera and explained that in most cases, a blood test administered twenty hours after consumption of Strattera would likely show no detectable traces of the medication. Dr. Johnston further concluded that Anderson's ability to distinguish right from wrong was not impaired by his "abnormal mental state" at the time of the homicide.

¶10 The State called its own expert witness during the trial, Dr. Christopher Tyre ("Dr. Tyre"). Dr. Tyre opined that Anderson had an antisocial personality disorder but did not suffer from a mental disease or defect due to a major depressive disorder or ingestion of alcohol and Strattera. Dr. Tyre concluded that at the time of the incident, Anderson was able to conform his conduct to the requirements of the law and appreciate the wrongfulness of his behavior.

¶11 The State also called a toxicologist who examined the blood test administered to Anderson when he was taken into custody. The toxicologist testified that the post-crime blood test administered to Anderson showed no detectable levels of Strattera in his blood.

¶12 In addition, the State presented evidence that shortly before Anderson's arrival at Hosey's residence, he had been arrested for striking someone in a bar. The arresting officer

charged Anderson with battery but then released him because he did not appear to be intoxicated.

¶13 At the close of evidence, a jury instructions conference was held, during which counsel discussed a modified version of a proposed pattern jury instruction indicating that the voluntary consumption of drugs or alcohol does not constitute a mental defect. Anderson's counsel asked the circuit court to insert the word "street" before the word "drugs." Instead, the circuit court instructed the jury as follows:

> The first question is at the time the crime was committed, did the defendant have a mental defect? Mental defect is an abnormal condition of the mind which substantially affects mental or emotional processes. The term "mental defect" identifies a legal standard that may not exactly match the medical terms used by mental health professionals. You are not bound by medical labels, definitions, or conclusions as to what is or is not a mental defect to which the witnesses may have referred.
>
> You should not find that a person is suffering from a mental defect merely because the person committed an act, committed a criminal act or because of the unnaturalness or enormity of the act or because a motive for the act may be lacking. Temporary passion or frenzy prompted by revenge, hatred, jealousy, envy, or the like does not constitute a mental defect. . . . An abnormally, an abnormality [sic] manifested only by repeated criminal or otherwise antisocial conduct does not constitute a mental defect. *A temporary mental state which is brought into existence by the voluntary taking of drugs or alcohol does not constitute a mental defect.*

7

(Emphasis added). The jury found that Anderson did not have a mental defect at the time the crime was committed, and Anderson was therefore convicted.

¶14 In an unpublished, per curiam opinion, the court of appeals reversed and remanded to the circuit court for a new trial on Anderson's insanity defense. The court concluded that the real controversy in Anderson's case was not fully tried because the jury instruction incorrectly suggested that the consumption of prescription medication is voluntary and cannot give rise to a mental defect. According to the court of appeals, the instruction prevented the jury from addressing whether Anderson's use of Strattera created a mental defect that made him unable to conform his conduct to the requirements of the law.

¶15 The State petitioned this court for review, which we accepted on January 13, 2014. We now reverse.

## II. STANDARD OF REVIEW

¶16 "'A circuit court has broad discretion in deciding whether to give a requested jury instruction.'" State v. Hubbard, 2008 WI 92, ¶28, 313 Wis. 2d 1, 752 N.W.2d 839 (citing State v. Coleman, 206 Wis. 2d 199, 212, 556 N.W.2d 701 (1996)). We will not overturn a circuit court's decision to give or not give a requested jury instruction absent an erroneous exercise of discretion. Id. "However, we independently review whether a jury instruction is an accurate statement of the law applicable to the facts of a given case." State v. Fonte, 2005 WI 77, ¶9, 281 Wis. 2d 654, 698 N.W.2d 594 (citation omitted). "'If the

8

overall meaning communicated by the instructions was a correct statement of the law, no grounds for reversal exist.'" Hubbard, 313 Wis. 2d 1, ¶27 (citing Fischer v. Ganju, 168 Wis. 2d 834, 850, 485 N.W.2d 10 (1992)).

## III. DISCUSSION

¶17 The question before us is whether the circuit court's instruction to the jury that "[a] temporary mental state which is brought into existence by the voluntary taking of drugs or alcohol does not constitute a mental defect" was erroneous. Anderson argues that the jury instruction failed to distinguish between the use of prescription medication and the use of illegal drugs, and as a result, the jury was prevented from considering whether Anderson's use of Strattera could give rise to a mental defect. Anderson relies on State v. Gardner, 230 Wis. 2d 32, 601 N.W.2d 670 (Ct. App. 1999), for the proposition that the consumption of prescription drugs is not "voluntary" for purposes of an insanity defense. Gardner involved an involuntary intoxication defense under Wis. Stat. § 939.42, as opposed to an insanity defense under Wis. Stat. § 971.15, but Anderson maintains that the rationale applies equally to both defenses.

¶18 The State concedes that the jury instruction was "not legally correct" because Anderson's defense was premised on his consumption of Strattera and alcohol, whereas the jury instruction discussed the taking of drugs or alcohol. According to the State, an insanity defense would not be precluded by a defendant's consumption of prescription medication alone, but

9

the defense is unavailable if the defendant mixes the prescription medication with alcohol.  However, the State argues that any error in the instruction was harmless, because even if the instruction had used "and" instead of "or," Anderson would still be ineligible for an insanity defense, because he admits he voluntarily consumed alcohol while taking Strattera.

¶19  Although the State concedes that the jury instruction was incorrect, we are not bound by a party's concession of law. Bergmann v. McCaughtry, 211 Wis. 2d 1, 7, 564 N.W.2d 712 (1997). Moreover, we independently review whether a jury instruction is an accurate statement of the law.  Fonte, 281 Wis. 2d 654, ¶9. The State and Anderson both maintain that the jury instruction was erroneous, but as we discuss below, nothing in our case law supports the proposition that the consumption of prescription medication may form the basis for an insanity defense.  We therefore hold that the circuit court's jury instruction was a proper articulation of the law.

¶20  We begin our discussion in Part A by reviewing the statutory and procedural requirements under Wis. Stat. § 971.15, the insanity defense statute, and Wis. Stat. § 939.42, the involuntary intoxication defense statute.  In Part B, we apply these requirements to the facts of this case and conclude that the circuit court's insanity defense instruction was an accurate statement of the law.

A. Insanity and Involuntary Intoxication Defenses

¶21  A criminal defendant may raise an affirmative defense of not guilty by reason of mental disease or defect, also known

10

as an "insanity" or "NGI" defense. Wis. Stat. § 971.15. The defendant bears the burden of establishing the defense "to a reasonable certainty by the greater weight of the credible evidence." Wis. Stat. § 971.15(3). Wisconsin Stat. § 971.15(1) provides that the defendant may establish an insanity defense by demonstrating that he lacked substantial capacity either to (1) appreciate the wrongfulness of his conduct, or (2) conform his conduct to the requirements of the law.

¶22 In contrast to an insanity defense under Wis. Stat. § 971.15, an involuntary intoxication defense is established if a defendant's intoxicated or drugged condition is involuntarily produced and either: (1) "Renders the [defendant] incapable of distinguishing between right and wrong;" or (2) "[n]egatives the existence of a state of mind essential to the crime." Wis. Stat. § 939.42.

¶23 An insanity defense under Wis. Stat. § 971.15 has been described as "coextensive" with the involuntary intoxication defense in Wis. Stat. § 939.42, although each contains distinct elements. See Gardner, 230 Wis. 2d at 38. For instance, a defendant capable of distinguishing between right and wrong may not assert an involuntary intoxication defense but may still be able to raise an insanity defense.

¶24 Beyond the defenses' distinct elements, each has unique procedural requirements that correspond to their respective substantive purposes. For instance, when an insanity defense is asserted, the trial is bifurcated into two phases: a "guilt" phase and a "responsibility" or "insanity" phase. Wis.

11

Stat. § 971.165(1); State v. Langenbach, 2001 WI App 222, ¶16, 247 Wis. 2d 933, 634 N.W.2d 916. During the guilt phase of the trial, the State must prove all the elements of the offense beyond a reasonable doubt. State v. Randall, 192 Wis. 2d 800, 809, 532 N.W.2d 94 (1995). If the insanity defense succeeds, the defendant will be found "not responsible" for the criminal conduct, but is still subject to commitment and treatment. See Wis. Stat. §§ 971.15, 971.17.

¶25 In contrast, an involuntary intoxication defense does not result in a bifurcated trial; rather, the entire trial consists of a "guilt" phase, at the end of which a prevailing defendant is found "not guilty" due to involuntary intoxication. See Christine M. Wiseman & Michael Tobin, 9 Wisconsin Practice Series: Criminal Practice and Procedure § 17.25 (2d ed.) ("If the [involuntary intoxication] defense is successfully applied, the result will be an acquittal on the charge . . . .").

B. The Circuit Court's Instruction to the Jury

¶26 The jury instruction at issue in this case explained that "[a] temporary mental state which is brought into existence by the voluntary taking of drugs or alcohol does not constitute a mental defect." Anderson stresses that the instruction failed to distinguish between prescription medication and illegal drugs. As a result, Anderson argues the jury was prevented from considering whether his use of Strattera, in conjunction with his consumption of a moderate amount of alcohol, supported an insanity defense. The State does not dispute that the

12

instruction was erroneous, but instead takes the position that any resulting error was harmless.

¶27 We disagree with both parties regarding the accuracy of the jury instruction.[8] This court has never held that consumption of prescription medication may give rise to a mental defect that would sustain an insanity defense, and Anderson has failed to cite to any Wisconsin case law that supports the conclusion that it does. The jury instruction was an accurate recital of the law. We have never distinguished between the use of prescription drugs and the use of illegal drugs in the context of an insanity defense, and see no reason to do so now. Anderson's attempt to shoehorn an involuntary intoxication defense under the insanity statute, Wis. Stat. § 971.15, is essentially nothing more than a policy argument that is wholly unsupported by our case law.

¶28 In general, when a defendant argues that prescription medication contributed to criminal conduct, the defense is raised under the involuntary intoxication statute, Wis. Stat. § 939.42. However, Anderson cannot assert an involuntary intoxication defense because his own expert witness concedes that he was capable of distinguishing right from wrong at the time of the crime. See Wis. Stat. § 939.42(1). Consequently, Anderson is stuck with raising an insanity defense, which is not

---

[8] Because we conclude that the circuit court's instruction to the jury was an accurate recital of the law, we need not address the State's argument that the court of appeals erroneously exercised its discretion in granting a new trial under Wis. Stat. § 752.35.

13

precluded by his expert's testimony. To succeed on his defense, Anderson must invoke the second prong of the insanity defense, which asks whether he was able to conform his conduct to the requirements of the law.[9] As explained above, this latter prong is available only as an insanity defense and not as an involuntary intoxication defense.

¶29 Anderson argues his use of Strattera should be able to form the basis of his insanity defense. Anderson correctly points out that in Gardner, the court of appeals determined that the use of prescription medication can form the basis of an involuntary intoxication defense under Wis. Stat. § 939.42. Gardner, 230 Wis. 2d at 40. However, Anderson ignores the fact that this holding has never been extended to an insanity defense raised under Wis. Stat. § 971.15. The involuntary intoxication defense focuses on the mental state of the defendant at the time of the crime and provides clear-cut requirements for the level of intoxication necessary to invoke the defense. See Wiseman & Tobin, supra ¶25 ("The defendant's intoxicated mental state is a defense only if it rendered him or her incapable of distinguishing between right and wrong when the act was committed."). In State v. Strege, 116 Wis. 2d 477, 486, 343 N.W.2d 100 (1984), we explained that a defendant raising a voluntary intoxication defense "must come forward with some

---

[9] Much like the involuntary intoxication defense, the first prong of the insanity defense asks whether the defendant was able to appreciate the wrongfulness of his conduct. The testimony of Anderson's expert precludes him from raising a defense under this prong.

14

evidence of the degree of intoxication which constitutes the defense. An abundance of evidence which does not meet the legal standard for the defense will not suffice." This rationale was applied to an involuntary intoxication defense in Funmaker v. Litscher, No. 00-C-625-C, 2001 WL 34377571, at *5 (W.D. Wis. Sept. 20, 2001).

¶30 Because Anderson cannot demonstrate that he possessed the requisite mental state for an involuntary intoxication defense, he attempts to bypass the defense's requirements by framing his argument as an insanity defense. In essence, Anderson asks us to create a new affirmative defense that would absolve a defendant whose use of prescription medication makes him unable to conform his conduct to the requirements of the law.[10]

¶31 At the same time, Anderson's argument would require us to ignore our existing precedent by holding that a jury instruction that provided for no such defense was in error. In other words, Anderson asks us to change the law and make this change retroactively apply to the time when the circuit court

---

[10] In fact, Anderson asks us to do even more. In spite of Gardner's caveat that the use of prescription medication will not give rise to an involuntary intoxication defense when the defendant "mixes a prescription medication with alcohol or other controlled substances," Anderson asserts that only "excessive" consumption of alcohol, as opposed to "moderate" drinking, should prevent a defendant from raising an insanity defense. State v. Gardner, 230 Wis. 2d 32, 42, 601 N.W.2d 670 (Ct. App. 1999). Anderson does not explain how "moderate," as opposed to "excessive," drinking should be gauged by this court, but as he provides no support for his proposed rule, the omission is of no consequence.

15

issued its jury instruction. We decline to undertake such a gross overreaching of our judicial mandate.[11]

¶32 The circuit court properly declined to amend the jury instruction to include an implied involuntary intoxication defense. However, we note that even if the law provided for an insanity defense arising from a defendant's use of prescription medication, it would have been inappropriate for the circuit court to instruct the jury that consumption of Strattera could create a mental defect under the facts of this case. The basis of Anderson's insanity defense was not his use of Strattera alone; rather, he argued that the drug, in combination with three other factors——including his consumption of alcohol—— created a mental defect.

¶33 The State maintains that the circuit court erred by instructing the jury regarding the effects of drugs or alcohol, rather than drugs and alcohol. The State's proposed jury instruction would read as follows: "[a] temporary mental state which is brought into existence by the voluntary taking of drugs and alcohol does not constitute a mental defect." Because Anderson's argument is founded in part on his consumption of

---

[11] We do not suggest that a defendant who takes prescription medication as directed is barred from raising an insanity defense. The circuit court instructed the jury that "[a] temporary mental state which is brought into existence by the voluntary taking of drugs or alcohol does not constitute a mental defect." (Emphasis added). This instruction explained that use of prescription medication cannot create a mental defect, but it in no way precludes a defendant from asserting an insanity defense on other grounds.

16

alcohol along with Strattera, it is unquestionable that he would not prevail on his insanity defense regardless of whether the circuit court's instruction had used the term "and alcohol" instead of "or alcohol." Assuming arguendo that the rationale in Gardner——which holds prescription drugs can form the basis of an involuntary intoxication defense——is also applicable to an insanity defense, any limitations to that defense would apply with equal force to this case. And, as the court of appeals explained in Gardner, one who "mixes a prescription medication with alcohol or other controlled substances" is not eligible for the involuntary intoxication defense.[12] Gardner, 230 Wis. 2d at 42; see also City of Waukesha v. Godfrey, 41 Wis. 2d 401, 406, 164 N.W.2d 314 (1969).

¶34 Gardner's reasoning is in keeping with the generally accepted principle that an individual is responsible for the consequences that result from voluntary consumption of mind-altering substances. For instance, in State v. Kolisnitschenko, 84 Wis. 2d 492, 499, 503, 267 N.W.2d 321 (1978), we explained that an insanity defense cannot be premised on the interaction between alcohol and illegal drugs, because "[o]ne who

---

[12] Gardner also explained that the involuntary intoxication defense is available only to a defendant who takes his prescription medication as ordered. Gardner, 230 Wis. 2d at 42. As the State points out, Anderson did not testify that he took his Strattera as prescribed, and at the time of the crime, there was no trace of Strattera in his bloodstream. Anderson's friend testified at trial that he had once observed Anderson taking an unidentified medication three times a week, but the Strattera was prescribed as a daily medication.

17

intentionally consumes drugs should be held to have intended all the consequences of the resulting intoxicated condition," since "individual volition played a major part in producing that condition." In Gardner, we extended this rationale to cases involving the interaction between alcohol and prescription medications.

¶35 Anderson's claim shares similarities with the defendant's argument in Godfrey, 41 Wis. 2d 401. In Godfrey, the defendant consumed prescription codeine and alcohol and was charged with driving while intoxicated. The defendant contested the circuit court's jury instruction that a driver is intoxicated "when his ability to operate a motor vehicle is appreciably or materially impaired because of his consumption of an alcoholic beverage or other intoxicating substance." Godfrey, 41 Wis. 2d at 405 (emphasis added). Godfrey argued that the instruction confused the jury regarding whether to consider his codeine consumption and its effect when mixed with alcohol. We disagreed, explaining: "We fail to see how these assertions could favorably affect the plight of the unfortunate defendant. A person who consumes an intoxicant along with medication, does so at his own peril." Id. at 406. Our reasoning in Godfrey equally applies in the context of an insanity defense. The established rule from Gardner, Kolisnitschenko, and Godfrey is that one who mixes drugs—prescription or otherwise—with alcohol does so at his or her own risk and is responsible for any consequences that result.

## IV. CONCLUSION

¶36 We conclude that the circuit court's instruction to the jury was an accurate statement of the law. We have never held that consumption of prescription medication can give rise to a mental defect that would sustain an insanity defense. We decline to craft a new affirmative defense that would incorporate elements of the involuntary intoxication and insanity defenses simply because Anderson cannot meet the requirements of the involuntary intoxication defense statute. Moreover, even if the circuit court had instructed the jury that the consumption of "drugs and alcohol" cannot create a mental defect, Anderson would fare no better, because it is established law that one who mixes prescription medication with alcohol is responsible for any resulting mental state. For these reasons, the decision of the court of appeals is reversed.

*By the Court.*—The decision of the court of appeals is reversed.

¶37 DAVID T. PROSSER, J. *(concurring).* The defendant admitted to police that he had a few beers before he killed Stacey Hosey and stabbed Branden Beavers-Jackson. Majority op., ¶¶5-7. Two blood tests taken after the homicide showed his blood alcohol concentration to be at least 0.15. Id., ¶8 n.7. Anderson did not consume alcohol involuntarily. Consequently, Anderson's claim of a temporary mental state brought into existence by the voluntary taking of a prescription drug could not prevail unless Anderson alleged and proved that his drinking had no effect on his allegedly drug-induced mental state. His own expert testified otherwise. Id., ¶8. Accordingly, any error in the jury instruction would be harmless beyond a reasonable doubt.

¶38 For the foregoing reasons, I respectfully concur.

¶39 SHIRLEY S. ABRAHAMSON, C.J. *(dissenting).* I agree with the court of appeals that the jury instruction incorrectly conveyed to the jury that the voluntary consumption of prescription medication cannot give rise to a defense of not guilty by reason of insanity (NGI).[1]

¶40 I disagree with the majority opinion's creation of a new rule that the effects of prescription medicines used as directed can <u>never</u> be the basis of an NGI defense.[2]

¶41 I start with the statutes, the one governing NGI and the other governing involuntary intoxication. The two are closely related. They have distinctive features but also share certain legal similarities; violation of each might be proven by similar facts.[3]

¶42 The NGI statute provides that a person is not responsible for criminal conduct if, at the time of such

---

[1] The case raises numerous issues, including preservation of objections in the circuit court and the power of the court of appeals under Wis. Stat. § 752.35 to grant a new trial. The court of appeals' per curiam opinion addressed several of them. I address only the issue of the instruction.

The legal concept of "voluntary intoxication" is not at issue here. Voluntary intoxication cannot form the basis of NGI. <u>State v. Kolisnitschenko</u>, 84 Wis. 2d 492, 495, 503, 267 N.W.2d 321 (1978). Yet simply because a defendant's use of prescription drugs as directed is "voluntary" in common parlance does not mean that it causes "voluntary intoxication" as a legal concept.

[2] Majority op., ¶29-32.

[3] See <u>State v. Gardner</u>, 230 Wis. 2d 32, 38, 601 N.W.2d 670 (1999) (citing Wis JI——Criminal 755, cmt for the proposition that "[t]he involuntary intoxication standard . . . is coextensive with the mental responsibility test").

conduct, as a result of mental disease or defect, the person lacked the capacity either to appreciate the wrongfulness of his or her conduct or conform to the requirements of the law. Wis. Stat. § 971.15(1).

¶43 The involuntary intoxication or drugged condition defense provides that a person is not responsible for criminal conduct if, at the time the act is committed, the intoxicated or drugged condition is involuntarily produced and renders the actor incapable of distinguishing between right and wrong in regard to the alleged criminal act. Wis. Stat. § 939.42(1).

¶44 A person who attempts to rely on an involuntary intoxication defense under Wis. Stat. § 939.42 can often meet the standard of possessing a "mental disease or defect" under Wis. Stat. § 971.15. "[I]n regard to the effect which involuntary intoxication must produce in order to be considered a defense, the same test applies as in the case of mental disease or deficiency as a defense." State v. Gardner, 230 Wis. 2d 32, 38, 601 N.W.2d 670 (Ct. App. 1999) (emphasis added, quoted source omitted). In sum, the facts giving rise to an involuntary intoxication defense can also support an NGI defense.

¶45 An involuntary intoxication defense can be based on prescription medicine, when used as directed by a medical professional.[4] The majority opinion accepts this premise. "It

---

[4] Majority op., ¶29 (citing Gardner).

2

is clear that the effects of prescription medication can form the basis of an involuntary intoxication defense."[5]

¶46 In contrast, according to the majority opinion, under no circumstances may prescription medicine, when used as directed by a medical professional, be the basis of an NGI defense.

¶47 I disagree with the majority opinion. I agree with both parties in the instant case that based on Gardner,[6] Kolisnitschenko,[7] and Gibson,[8] a temporary mental state that is brought into existence by the taking of a prescription medicine as directed can qualify as a mental defect for purposes of an NGI defense.

¶48 I reach this conclusion not only on the basis of these specific cases but also on the basis of the underlying statutes, which demonstrate that the defenses of NGI and involuntary intoxication are closely related in the law. If the effects of prescription medicines used as directed can form the basis of involuntary intoxication, why cannot the effects of prescription medicines used as directed form the basis of an NGI defense, when the two defenses overlap? Why does the majority opinion create a new per se rule that is inconsistent with the

---

[5] Gardner, 230 Wis. 2d at 40, 41-42.

[6] Gardner, 230 Wis. 2d 32.

[7] Kolisnitschenko, 84 Wis. 2d 492.

[8] Gibson v. State, 55 Wis. 2d 110, 197 N.W.2d 813 (1972).

3

overlapping aspects of the NGI and involuntary intoxication defenses?[9]

¶49 I am unpersuaded by the majority opinion, which reaches what on its face appears to be a conclusion contrary to the statutes and case law.

¶50 In any event, the real dispute between the parties focuses on whether the defendant's use of a combination of prescription drugs and alcohol may constitute the basis of an NGI defense. The State urges that a temporary mental state brought into existence by the voluntary taking of prescribed medicine as directed in combination with alcohol (no matter how small an amount) cannot be the basis of an NGI defense.

¶51 The majority opinion need not grapple with this issue because it holds that a defendant who consumes only prescription drugs is not eligible for an NGI defense. Under the majority opinion, whether the defendant consumed alcoholic beverages along with the prescription medication is irrelevant.

¶52 Because the majority opinion fails to provide any reason why the use of prescription drugs as directed cannot form the basis of an NGI defense when our case law already recognizes that such use can form the basis of an involuntary intoxication defense, I dissent.

¶53 I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.

---

[9] Majority op., ¶29.