GUNDRUM, J.[1]
¶1 Kristina Smithers appeals from an order convicting her of operating a motor vehicle while intoxicated, first offense. For the following reasons, we affirm.
Background
¶2 Smithers was arrested and cited by Village of Menomonee Falls police for operating a motor vehicle while intoxicated, in violation of WIS. STAT. § 346.63(1)(a). After being found guilty at a municipal court trial, she appealed for a trial de novo in the Waukesha County Circuit Court. There she moved the court to permit her to raise involuntary intoxication as a defense based on her assertion that her intoxication was due to prescription medication taken as prescribed. The court denied the motion on the basis that, inter alia, the defense was not appropriate under the facts of this case. A court trial was held. Notwithstanding its denial of Smithers' motion, the court permitted Smithers to present evidence and argue against her liability based on her assertion that she was involuntary intoxicated. The following is relevant testimony from the trial.
¶3 The arresting officer testified that he was dispatched to I-41 southbound following "several phone calls [to dispatch] regarding a possible impaired driver that was traveling southbound on I-41," including that the driver was "weaving back and forth between [the] center and right lane." When the officer approached the area of the reported "truck," he observed "several vehicles quite a ways ahead ... that appeared to be traveling under the 70-mile-per-hour speed limit." The officer suspected these were the callers following the suspect truck. After catching up to the truck, the officer observed it "kind of drifting in the center to the right lane" and "weaving back and forth in between" those two lanes. "At one point the vehicle drifted to the right lane and off-into the shoulder, and then back on to the roadway." He estimated the truck was traveling forty-five miles per hour in a seventy mile-per-hour zone.
¶4 The officer performed a traffic stop on Smithers, the driver of the truck, and when he approached the vehicle he believed he observed "some medication or something on the center console." The officer testified to his direct observation of Smithers' significantly impaired condition, including that she was "very lethargic," "slow to respond," "could barely stand up," and "wasn't really responsive to anything." When the officer asked Smithers if she had taken any medication, Smithers only indicated that she had taken Sudafed"or something similar to that." When the officer asked her if she was under the care of a doctor, Smithers indicated she was not. The officer did not detect signs of alcohol consumption and instead believed Smithers to be under the influence of medication. He arrested her and a sample of her blood was procured.
¶5 Diane Kalscheur, an analyst from the Wisconsin State Laboratory of Hygiene, testified that four substances were found in Smithers' blood-Carisoprodol, Meprobamate, Tramadol, and Temazepam. She described Carisoprodol as "a very strong muscle relaxant" and testified that the level in Smithers' blood was "9.7 micrograms per mill," which was "greater than the therapeutic range which is 1 to 5 micrograms per milliliter." She added on cross-examination that the level of Carisoprodol found in Smithers' blood "does signify to me ... that perhaps there was more ingestion than would have typically been prescribed." Meprobamate was also found in Smithers' blood, and Kalscheur testified that this drug "has its own impairing activity." She stated that Carisoprodol and Meprobamate are "both quite sedating." She agreed that based on the concentrations found in Smithers' blood, it appeared that the Carisoprodol and Meprobamate were "the culprits," adding that they were the "two most significant drugs in their amounts" that she observed with regard to Smithers' blood sample.
¶6 Kalscheur testified that Tramadol was also found in Smithers' blood, and that this medication would "cause sedation or the relief of that more moderate to severe pain." She added that "because of the sedating property that [Tramadol ] may have, that in conjunction with the Carisoprodol and Meprobamate I think would just broaden the scope of possible impairment." She added that these three drugs together "would just ... cause more impairment than just each of them separately." Kalscheur testified that Temazepam was also found in Smithers' blood and the "primary purpose" of this fourth medication "is to cause sedation or kind of help [a person] get to sleep."[2]
¶7 Smithers testified that she had been prescribed each of these medications and had taken them as prescribed prior to her operation of her vehicle on the day in question. She stated she did not feel impaired in any way when she left West Bend and did not begin to feel impaired "until right before" she got pulled over, but she could not recall the amount of time between her feeling of impairment and when she was pulled over. She testified that she "was feeling dizzy, uncoordinated" "was getting confused," and "a little bit more unaware of what's going on." She intended to "[p]ull off on the next exit," but agreed with her counsel that she was pulled over by the police before she could do that.
¶8 James Oehldrich, a forensic toxicologist consultant, also testified on Smithers' behalf. He stated that "based on the information [he] had" he "believe[d] [Smithers] was taking her medication as prescribed." Referencing different published authorities than Kalscheur, Oehldrich agreed with Smithers' counsel that the level of medications found in Smithers' blood was "within the therapeutic range." He added that even though an amount might be outside the therapeutic range it still "could be within what the doctor had prescribed." He explained that Meprobamate is a metabolite of Carisoprodol and that he believed it was the combined effect of Carisoprodol and Meprobamate that caused Smithers' impairment at the time she was operating her vehicle. He testified that he had heard most of the testimony the officer had provided earlier in the trial and agreed that "the symptoms" the officer observed from Smithers on the night of her arrest were consistent with the effects of Carisoprodol and Meprobamate.
¶9 In closing argument, Smithers conceded she could not safely operate her vehicle, but argued that "nothing ... indicates that [she] was doing anything other than taking the medications which had been prescribed to her, and they had unexpected, nonanticipated adverse effect. Obviously earlier than she experienced and was aware of it, but within a very short time after she left West Bend."
¶10 The circuit court found that Smithers had taken her medications as prescribed prior to driving but nonetheless found her guilty of OWI because she had been operating her motor vehicle when "clearly [she] had reached a point where she was impaired," "could not safely ... operate [her] vehicle," and "should not have been operating a motor vehicle" due to the drugs in her system. Smithers appeals.
Discussion
¶11 Smithers did not dispute at trial, and does not dispute on appeal, that more than sufficient evidence was presented at trial to establish that she was operating her vehicle while she was incapable of safely doing so due to the prescription medications she had taken. Nonetheless, she argues the circuit court erred in not acquitting her based upon the defense of involuntary intoxication.
¶12 We will not disturb the court's findings of fact unless they are clearly erroneous, see WIS. STAT . § 805.17(2) ; however, whether the defense of involuntary intoxication is available to Smithers and the scope of that defense are questions of law we review independently. See State v. Dundon , 226 Wis. 2d 654, 662, 594 N.W.2d 780 (1999). We conclude the circuit court did not err.
¶13 To begin, as we stated in State v. Gardner , 230 Wis. 2d 32, 601 N.W.2d 670 (Ct. App. 1999), the involuntary intoxication defense is not "available" to a defendant where the defendant "voluntarily undertakes an activity incompatible with" the side effects of the prescribed medications he/she has taken. Id. at 42. Furthermore, the involuntary intoxication defense only acts as a defense if the defendant's drugged condition was "involuntarily produced" and either: (1) rendered her "incapable of distinguishing between right and wrong in regard to the alleged criminal act at the time the act is committed" or (2) "[n]egatives the existence of a state of mind essential to the crime." See WIS. STAT . § 939.42 ; State v. Anderson , 2014 WI 93, ¶22, 357 Wis. 2d 337, 851 N.W.2d 760. Based upon the facts of this case, we conclude Smithers is not saved by the involuntary intoxication defense for the following reasons: (1) the defense is not "available" to her because she "voluntarily undert[ook] an activity incompatible with" the side effects of the medications she had taken; (2) relatedly, the evidence shows that Smithers continued driving despite realizing the medications were impairing her ability to drive safely, i.e., at a time when she was still capable of distinguishing between right and wrong, she decided to continue driving farther on the interstate; and (3) there is no "state of mind essential to the crime" of OWI, and thus subsec. (2) of § 939.42 simply does not apply. See § 939.42 ; Anderson , 357 Wis. 2d 337, ¶22 ; Gardner , 230 Wis. 2d at 42.
¶14 In this case, Kalscheur testified that Carisoprodol and Meprobamate are "quite sedating," and Smithers' own expert, Oehldrich, agreed that "the symptoms" Smithers exhibited were consistent with the effects of these two drugs. Kalscheur added that because of the "sedating property" of the Tramadol Smithers also had taken, "in conjunction with the Carisoprodol and Meprobamate," the Tramadol"would [have] just broaden[ed] the scope of possible impairment," and that the three drugs together "would just ... cause more impairment than just each of them separately." Kalscheur testified that Temazepam also was found in Smithers' blood and the "primary purpose" of that medication "is to cause sedation or kind of help [a person] get to sleep."
¶15 The sedative effect of these medications was incompatible with safely operating a motor vehicle on the interstate, the dangerous activity Smithers voluntarily undertook while on these medications. Relatedly, Smithers acknowledged in her testimony that she recognized the impairing effect the medications were beginning to have on her, yet instead of pulling to the side of the road, she continued driving, with the intention of exiting the interstate at the next opportunity. The record does not clearly show just how far she continued driving after realizing she was becoming impaired; however, it does indisputably show that instead of immediately pulling to the side of the road, she continued driving some distance while she was "[ ]capable of distinguishing between right and wrong in regard to the alleged criminal act at the time" she was committing the act. See WIS. STAT. § 939.42. She knew she was becoming impaired and thus creating a dangerous situation, yet she continued driving for some distance. Thus, there was no basis for the circuit court to acquit Smithers based upon an involuntary intoxication defense.
¶16 Smithers asks us to read into WIS. STAT . § 346.63(1)(a)"an element that the defendant knew or should have known that he or she was impaired (or that his or her conduct would lead to impairment)" and that "this element was negated by her involuntary intoxication." On this point, she is arguing that subsec. (2) of WIS. STAT . § 939.42 applies, in which a drugged condition is a defense if the condition is involuntarily produced and "[n]egatives the existence of a state of mind essential to the crime."
¶17 We readily dispatch this argument and agree with the circuit court's conclusion that WIS. STAT . § 346.63(1)(a)"doesn't require a state of mind." In support of this determination, we note our supreme court's decision in State v. Luedtke , 2015 WI 42, 362 Wis. 2d 1, 863 N.W.2d 592. Addressing § 346.63(1)(am), which imposes liability for "operating a motor vehicle with a detectable amount of a restricted controlled substance in the blood," the Luedtke court held that that offense was a strict liability offense. Luedtke , 362 Wis. 2d. 1, ¶64. After considering the similar strict liability nature of other subsections of § 346.63, our supreme court more broadly stated that
[h]ad the legislature intended operating while under the influence crimes to require a knowledge requirement, we would expect to see such a requirement in related statutes, but none exists. Because the legislature has not drafted a scienter requirement into the related statutes, we will not read one into this statute.
Luedtke , 362 Wis. 2d 1, ¶67.
¶18 WISCONSIN STAT . § 346.63(1)(a), the provision under which Smithers was convicted, provides in relevant part: "No person may drive ... a motor vehicle while ... under the influence of any ... drug to a degree which renders ... her incapable of safely driving." The legislature "has not drafted a scienter [or 'state of mind'] requirement" into this statute. See Luedtke , 362 Wis. 2d 1, ¶67. Following our supreme court's lead in Luedtke , we decline to read such a requirement into § 346.63(1)(a) where the legislature did not choose to write it into the statute. Thus, WIS. STAT . § 939.42(2) has no application to this case.
By the Court. -Order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2)(b) (2015-16). All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Numerous websites discuss side effects of Carisoprodol, Meprobamate, Tramadol, and Temazepam. The websites identify drowsiness and/or dizziness as common side effects of these medications. See , e.g. , MedLine Plus, U.S. Nat'l Library of Medicine, Carisoprodol (last updated Oct. 15, 2018), https://medlineplus.gov/druginfo/meds/a682578.html; MedLine Plus, U.S. Nat'l Library of Medicine, Meprobamate (last updated Apr. 15, 2017), https://medlineplus.gov/druginfo/meds/a682077.html; MedLine Plus, U.S. Nat'l Library of Medicine, Tramadol (last updated Nov. 1, 2018), https://medlineplus.gov/druginfo/meds/a695011.html; MedLine Plus, U.S. Nat'l Library of Medicine, Temazepam (last updated Sept. 15, 2017), https://medlineplus.gov/druginfo/meds/a684003.html.