COURT OF APPEALS
DECISION
DATED AND FILED

October 9, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. 2024AP553

STATE OF WISCONSIN

Cir. Ct. No. 2021TP10

IN COURT OF APPEALS
DISTRICT II

IN RE THE TERMINATION OF PARENTAL RIGHTS TO T.P.W. III, A PERSON UNDER THE AGE OF 18:

FOND DU LAC COUNTY DEPARTMENT OF SOCIAL SERVICES,

    PETITIONER-RESPONDENT,

  V.

T. P. W., JR,

    RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Fond du Lac County: TRICIA L. WALKER, Judge. *Affirmed*.

¶1    NEUBAUER, J.[1] T.P.W. Jr., referred to herein by the pseudonym Fred, appeals from an order terminating his parental rights to his son, Sam (also a pseudonym). The trial court terminated Fred's parental rights pursuant to WIS. STAT. § 48.415(2)(a) after a jury found that he had failed to meet the conditions that had been established for the safe return of Sam to his home. On appeal, Fred argues that the court violated *Kenosha County Department of Human Services v. Jodie W.*, 2006 WI 93, 293 Wis. 2d 530, 716 N.W.2d 845, by not giving the jury an "impossibility" instruction, which he contends was warranted because he was incarcerated for a period of time after the conditions were imposed and, for that reason, was unable to meet them. As explained in greater detail below, this court concludes that the facts in this case did not support an impossibility instruction under *Jodie W.*, and thus, the trial court did not erroneously exercise its discretion in declining to give it.

### BACKGROUND

¶2    Sam and his sister were removed from the home of their biological mother in May 2018, when Sam was four years old. Sam was initially placed with Fred, who did not live with the children's mother, but was removed the next day and placed with his maternal grandparents. According to a report prepared by Nancy Kartos, the social worker assigned to Sam's case, Sam's early years were spent with his mother, "who exposed him to drug dealers, gun dealers, sex offenders, and allowed him to live in an extremely filthy home." Fred, the report notes, was "in prison for the majority of [Sam's] life" because of "multiple drug

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

charges … and multiple domestic and battery charges." As a result, he "was never a full time caretaker to his son."

¶3 Following Sam's removal, the Fond du Lac County Department of Social Services (County) commenced a child in need of protective services (CHIPS) proceeding. At a dispositional hearing in August 2018, Sam was determined to be in need of protection or services and placed in foster care. The dispositional order identified the following eight conditions Fred would have to meet in order to have Sam returned to his custody:

- "maintain safe, suitable and stable housing";

- "participate in a parenting assessment and parenting classes";

- "participate in an AODA assessment";

- "demonstrate the ability to meet [Sam]'s medical, dental, mental health and educational needs";

- "make all reasonable efforts to maintain stable, and legal employment as means of support that will allow him to support [Sam] and himself";

- "cooperate with Fond du Lac County Department of Social Services and his Social Worker";

- "have no new criminal law violations"; and

- if incarcerated, "cooperate with the Fond du Lac County Department of Social Services and any facility in which he is incarcerated."

¶4 Kartos reviewed the conditions with Fred in July 2018 before they were made part of the dispositional order. According to her, Fred "did not have a problem with them." Kartos also discussed Fred's "long history of incarceration"

3

with him at that time and warned him "that if he continued down that path," Sam would not be allowed to live with him.

¶5      In October 2018, approximately two months after the dispositional order was entered, Fred was incarcerated again. According to Kartos, Fred "accrued new criminal charges and went back to prison, and then accrued more new charges in jail and extended his stay." He was incarcerated in April 2021 when the County filed a petition to terminate his parental rights. In the petition, the County alleged that Sam continued to be in need of protection or services because Fred had not met seven of the eight conditions set for Sam's return.

¶6      A jury trial was held on the County's petition in October 2023. At the trial, Kartos testified about the conditions that were imposed on Fred, the County's efforts to help him meet them, and his progress in doing so between the time they were imposed and the time the County filed the termination of parental rights petition.

¶7      Kartos testified that Fred did not meet many of the conditions for return. As to the first condition, Kartos acknowledged that Fred lived in suitable housing between August 2018, when the conditions were imposed, and October 2018, when he was incarcerated. After his incarceration, however, he was unable to meet this condition. Kartos acknowledged that the lack of stable housing was important because the County could not return Sam to Fred while he was incarcerated.

¶8      According to Kartos, Fred also failed to meet the second condition of "participat[ing] in a parenting assessment and parenting classes." Kartos testified that the County planned "to do a parenting program" for Fred, but he was unable to participate because he was incarcerated. Fred testified that he enrolled

in a parenting class while in the Jefferson County jail and received a certificate of completion for it. At trial, he described the class as involving videos and role playing to learn parenting skills. Kartos confirmed that Fred informed her that "he was in a parenting program" for a portion of the time he was incarcerated but testified that he was unable to provide any details about it, so that program "would probably not meet that condition."

¶9 The third condition required Fred to participate in an alcohol and other drug abuse (AODA) assessment. Kartos confirmed that Fred did not complete an assessment. She testified that "[t]here really wasn't much [she] could do from the outside" once Fred was incarcerated, but that she knew he had been offered "AODA counseling and programming" while incarcerated. A social worker at the prison where Fred was incarcerated testified that he was offered AODA programming before April 2021 but refused to participate. (According to Fred, AODA and other programming was shut down during his incarceration due to the COVID-19 pandemic.)

¶10 The fourth condition required Fred to "demonstrate the ability to meet his child's medical, dental, mental health and educational needs." Before Fred was incarcerated, he was not Sam's "main caregiver" and did not attend Sam's appointments. Sam's foster mother testified that she occasionally talked to Fred about Sam, but he did not ask specifically about medical or mental health issues that Sam was experiencing. Kartos testified that Fred "was not able to provide these services to [Sam]" because he was incarcerated for almost all of the relevant time period.

¶11 Kartos also testified that Fred failed to meet the fifth condition of making reasonable efforts to maintain stable employment so that he would be able

to support Sam. Fred was employed during the two-month period before his incarceration but lost his job when he was incarcerated. Fred testified that he worked in the kitchen while incarcerated, but his pay from that job was not sufficient to support Sam.

¶12 Finally, Kartos testified that Fred did not satisfy the seventh condition of not violating the criminal law because he violated the terms of his extended supervision and was reincarcerated in October 2018 for a period of thirty-six months and, while serving that sentence, was involved "with a battery on an inmate" which resulted in an additional charge and six additional months of incarceration.[2]

¶13 After the close of evidence, the trial court heard argument about whether to give the jury an "impossibility" instruction. Fred argued that the instruction was warranted under *Jodie W.*, in which our supreme court held that a mother's parental rights had been terminated in violation of her substantive due process rights because she had been found unfit based solely on her failure to comply with a condition of return that was impossible for her to fulfill due to her incarceration. The trial court concluded that *Jodie W.* was distinguishable because the mother in that case had been incarcerated at the time her conditions for return were imposed, whereas Fred's incarceration did not begin until two months after his conditions for return were imposed. The court also noted that the County had presented evidence tending to show that Fred failed to meet multiple conditions of return, whereas only a single condition was at issue in *Jodie W.* Based on its

---

[2] The termination of rights petition indicates that after the dispositional order was entered, Fred was charged with falsely presenting a noncontrolled substance and later, in a separate case, with battery by prisoners.

conclusion that ***Jodie W.*** was materially distinguishable, the court declined to give the instruction.

¶14 Instead, the trial court read to the jury an instruction that closely tracked the pattern instruction applicable to termination proceedings in which the ground for termination is the child's continuing need of protection or services. *See* WIS JI—CHILDREN 324. With respect to the requirement that the County prove that Fred failed to fulfill the conditions of return, the instruction stated as follows:

> In determining whether [Fred] failed to meet the conditions established for the safe return of [Sam] to the home, you may consider the following: The length of time [Sam] has been in placement outside the home; the number of times [Sam] has been removed from the home; [Fred]'s performance in meeting the conditions for return of [Sam]; [Fred]'s cooperation with the social service agency; [Fred]'s conduct during periods in which [Sam] had contact with [Fred]; and all other evidence presented during this hearing which assists you in making these determinations.

The jury returned a verdict finding that Fred had failed to meet the conditions for return. At a subsequent disposition hearing, the court concluded that termination of Fred's parental rights would be in Sam's best interest.

## DISCUSSION

¶15 On appeal, Fred challenges the trial court's decision not to give an impossibility instruction. Because a trial court has broad discretion in instructing juries, this court will not disturb its decisions about which instructions to give "absent an erroneous exercise of discretion." ***State v. Anderson***, 2014 WI 93, ¶16, 357 Wis. 2d 337, 851 N.W.2d 760. However, whether a jury instruction is appropriate under the given facts of a case is a legal issue that this court reviews de novo. ***Id.***

¶16     The parties' arguments focus on *Jodie W.*, so this court begins with a discussion of that case. In *Jodie W.*, Kenosha County filed a CHIPS petition concerning Jodie's son two months after Jodie was incarcerated. *Jodie W.*, 293 Wis. 2d 530, ¶¶4-5. Several months later, the circuit court entered a dispositional order imposing conditions she would have to meet to have her son returned, including obtaining and maintaining a suitable residence. *Id.*, ¶¶6-7. The county later filed a petition to terminate Jodie's rights under WIS. STAT. § 48.415(2) on the ground that she had not met the conditions and, due to her continuing incarceration, likely would not do so within the next year. *Jodie W.*, 293 Wis. 2d 530, ¶8. Jodie entered a no-contest plea, acknowledging that she would not be able to meet the suitable residence condition due to her incarceration. *Id.*, ¶10. The court accepted Jodie's plea as the basis for a finding of unfitness and later entered an order terminating her parental rights. *Id.*, ¶¶11, 16.

¶17     On appeal, our supreme court framed the issue as follows: "whether the circuit court's finding of parental unfitness violated Jodie's constitutional right to substantive due process because one or more of the court-ordered conditions of return were impossible for Jodie to meet at the time they were imposed." *Id.*, ¶23. The court recognized that because Jodie had a fundamental liberty interest in parenting her son, the government could only terminate her rights if WIS. STAT. § 48.415(2) had been narrowly tailored to meet a compelling interest. *Jodie W.*, 293 Wis. 2d 530, ¶¶39-41. Though the statute was aimed at effecting a compelling interest in "protect[ing] children from unfit parents," *id.*, ¶41, the court concluded that neither the "conditions of return [nor] the circuit court's evaluation of Jodie's failure to meet these conditions [had been] narrowly tailored to meet that interest." *Id.*, ¶55.

¶18    Narrow tailoring, in our supreme court's view, requires an individualized evaluation of "the particular facts and circumstances relevant to the parent and child," including:

> the parent's relationship with the child and any other child both prior to and while the parent is incarcerated, the nature of the crime committed by the parent, the length and type of sentence imposed, the parent's level of cooperation with the responsible agency and the Department of Corrections, and the best interests of the child.

*Id.*, ¶50.  Instead of examining this broader array of circumstances, the circuit court had found Jodie unfit solely based on her failure to fulfill a condition that she could not possibly fulfill because of her incarceration.  The supreme court made clear that that was not a constitutionally sufficient basis to terminate her rights.  *See id.*, ¶49 ("We … conclude that a parent's failure to fulfill a condition of return due to his or her incarceration, standing alone, is not a constitutional ground for finding a parent unfit."); *id.*, ¶50 ("We simply conclude that a parent's incarceration is not itself a sufficient basis to terminate parental rights."); *id.*, ¶55 ("We conclude that the circuit court improperly deemed Jodie unfit solely by virtue of her status as an incarcerated person without regard for her actual parenting activities or the condition of her child ….").

¶19    In the present case, Fred contends that the trial court erred because it misread ***Jodie W.*** to apply only when a condition is impossible to fulfill at the time it is imposed.  He argues that "[w]hat matters is whether a person's incarceration makes a condition impossible to satisfy."  He contends that "the jury instructions and verdict allowed the jury to find that the grounds were met solely because Fred's incarcerated status made it impossible for him to satisfy one or more conditions."  Specifically, he states that the jury could have found that he failed to

meet the conditions of return "because it was impossible for Fred to provide housing or be employed while he was incarcerated."

¶20    The County disagrees, arguing that *Jodie W.* did not require an impossibility instruction in this case because (1) it was not impossible for Fred to meet the conditions for return at the time they were imposed and (2) Fred's "rights were not terminated solely because of unmet conditions that were arguably made impossible due to being incarcerated." The County emphasizes that the evidence showed that Fred failed to satisfy certain conditions for reasons entirely unrelated to his incarceration. As an example, it notes that Fred did not meet the condition of refraining from new criminal violations because he chose to engage in criminal behavior, not because his incarceration made it impossible for him to avoid doing so.

¶21    This court agrees with the County's reading of *Jodie W.* That case stands for two important propositions that materially distinguish it from the present case. First, a condition of return is "impossible" to meet under *Jodie W.* if the parent cannot possibly fulfill it at the time it is imposed. Fred's argument to the contrary, in which a condition becomes "impossible" to meet any time a parent is incarcerated and thereby becomes unable to fulfill it, reads *Jodie W.* too broadly and in a way that is untethered to the facts of that case. The mother in *Jodie W.* was incarcerated five months before her conditions of return were imposed, a fact that shaped our supreme court's framing of her due process challenge. *See Jodie W.*, 293 Wis. 2d 530, ¶¶4, 23 (defining issue as whether conditions of return violated substantive due process because they "were impossible for Jodie to meet *at the time they were imposed*" (emphasis added)). The court in *Jodie W.* concluded that her conditions of return had not been narrowly tailored to her individual circumstances, as required under substantive due process principles,

10

because they included tasks that were impossible for her to accomplish from the moment they were imposed. *Id.*, ¶¶49, 55.

¶22 Here, by contrast, Fred has not shown that any of the conditions imposed upon him were impossible for him to meet at the time they were imposed. Though Fred had apparently been incarcerated for periods of time before the initiation of the CHIPS proceeding, he does not claim that he was incarcerated when the dispositional order containing the conditions of return was entered in August 2018. Nor does he argue that any of the conditions were impossible for him to meet at that time. His claim of impossibility is instead linked to a period of incarceration that began two months later, in October 2018. While this court agrees with Fred that the jury could have concluded that his incarceration in October 2018 hindered him in meeting those (and other) conditions, his incarceration did not make the conditions impossible to meet under *Jodie W.*

¶23 The second way in which *Jodie W.* differs materially from the present case concerns the basis for the finding of unfitness. The supreme court in *Jodie W.* was concerned not only by the fact that the mother could not possibly have satisfied the stable housing condition due to her incarceration but also with the fact that her failure to meet that condition was the sole predicate for the circuit court's finding of unfitness. In the present case, by contrast, the County presented evidence that Fred had failed to meet all but one of the court-ordered conditions. The County reviewed this evidence in its closing argument specifically noting several conditions that Fred could have made efforts toward meeting while incarcerated, such as making telephone calls to maintain contact with Sam and participating in AODA programming. Moreover, the evidence was undisputed that Fred failed to comply with the condition requiring him to avoid violations of the criminal law.

11

¶24 Whereas the finding of unfitness in *Jodie W.* was based on the mother's stipulation that she failed to meet one condition, in the present case, the jury had evidence before it (some of which was undisputed) that Fred had not met multiple conditions of return. Even if Fred could convince this court that one or more of his conditions were impossible for him to meet, he points to nothing in the record to suggest that the jury's finding that he had failed to meet his conditions of return was based solely on its conclusion that he had not met the impossible conditions.

¶25 Finally, Fred argues that "the jury instructions allowed [his] rights to be terminated without any consideration of the contextual factors that *Jodie W.* deemed relevant," such as the nature of his criminal offenses, the sentence imposed, and his relationship with Sam. Again, this court disagrees. Although the jury instruction did not specifically direct the jury to consider those factors, it did not foreclose their consideration either. The jury was instructed that it could consider, among other things, Fred's "performance in meeting the conditions for return"; his cooperation with the County; his "conduct during the periods in which [Sam] had contact with [him]"; and "all other evidence presented during th[e] hearing which" the jury found helpful. In considering Fred's efforts to meet the conditions of return, the jury could consider the evidence showing that Fred committed two criminal offenses after the dispositional order, one of which resulted in the revocation of his extended supervision and his return to prison to serve a term of thirty-six months, during which time he committed a second offense that added six additional months of incarceration. In considering Fred's conduct during the times he had contact with Sam, the jury could consider evidence relevant to the nature and depth of his relationship with Sam. The instruction given to the jury closely tracked the pattern instruction that was

12

approved in 2018, twelve years after *Jodie W.* was decided. *See* WIS JI—CHILDREN 324, Comment. This court is not persuaded that the instruction misstated the applicable law or misled the jury. *See **Peplinski v. Fobe's Roofing, Inc.***, 193 Wis. 2d 6, 23-24, 531 N.W.2d 597 (1995).

## CONCLUSION

¶26 The trial court correctly concluded that the present case was materially distinguishable from *Jodie W.* and did not require the giving of an impossibility instruction to the jury. Its decision not to give the instruction was not an erroneous exercise of discretion.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)